[Sac. No. 806. Department One. — August 3, 1901.]

JOHN TUOHY, Respondent, v. A. D. MOORE, Appellant.

VENDOR AND PURCHASER — CONTRACT OF SALE — RESCISSION — IMPOSSIBILITY OF PERFORMANCE — INEQUITABLE ACTION. — An action will not lie in favor of a vendor to rescind a contract for the sale of land for impossibility of performance in fact, where it appears that the vendor might have avoided such impossibility, and might have obtained title and performed on his part, and that the purchaser had gone to great expense in endeavoring in good faith to carry out the provisions of the contract on his part, and was only hindered therefrom by a receiver, unnecessarily appointed at the plaintiff's instigation. Such action to rescind shows an utter want of equity.

ID. — IMPOSSIBILITY OF PERFORMANCE — EXCUSE FOR NON-PERFORMANCE. — Impossibility of performance, in order to be an excuse for non-performance of a contract, must attach to the thing to be done, and not to him alone who contracted to do it. It must be an *impossibilitas rei*, as distinguished from an *impossibilitas facti*. An impossibility in fact, which might have been avoided by the plaintiff, and which he made no effort to avoid, cannot excuse non-performance on his part.

ID. — MORTGAGEE IN POSSESSION — FORECLOSURE — UNNECESSARY AP-
POINTMENT OF RECEIVER — CONTRACT OF SALE — INTERFERENCE WITH
PURCHASER. — Where it appears that the plaintiff was a mortgagee
in possession under an express contract entitling him to farm the
lands and pay rents to the purchaser under foreclosure sale, and
unnecessarily had his nephew appointed receiver in the foreclosure
suit, and, after purchase under the decree, made the contract of sale
in controversy, and subsequently the receiver, who had full knowl-
edge of the contract, interfered with the performance thereof by
the purchaser, which the vendor made no effort to stop, the vendor
cannot equitably insist upon a rescission of the contract for impossi-
bility of performance of the contract by both parties.

ID. — CERTIFICATE OF SALE TO PLAINTIFF — TIME FOR REDEMPTION. —
Though the certificate of sale to the plaintiff incorrectly named one
year as the time for redemption, where it appears that the mort-
gage was made prior to the amendment to section 702 of the Code
of Civil Procedure, fixing the limit of one year, as matter of law
the plaintiff was entitled to a deed at the expiration of six months.

ID. — CONTRACT OF SALE DURING TIME FOR REDEMPTION — ACTION TO
RESCIND — ACCRUAL OF DEED — POSSIBILITY OF PERFORMANCE. —
Where the contract of sale was made by the plaintiff when the time
for redemption had only one month and seven days to run, and the
action to rescind the contract was brought only seven days before
the right to the deed accrued, the plaintiff's want of performance is
not excusable. He should either have acquired the equity of re-
demption, or have waited until the accrual of his deed, which would
have operated to discharge the receiver, and made performance fully
possible on his part, as well as on the part of the purchaser.

APPEAL from a judgment of the Superior Court of Tulare
County and from an order denying a new trial. W. B. Wal-
lace, Judge.

The facts are stated in the opinion.

Hannah & Miller, and Van Ness & Redman, for Appellant.

Plaintiff, by his agreement, was bound to control the acts of
third parties, and cannot be excused for non-performance in
fact. (Hare on Contracts, 639; *The Harriman,* 9 Wall. 172;
*Dermott* v. *Jones,* 2 Wall. 1; *People* v. *Bartlett,* 3 Hill, 570;
*Klauber* v. *San Diego Street Car Co.,* 95 Cal. 353; *Fresno Milling
Co.* v. *Fresno Canal etc. Co.,* 126 Cal. 640; *Keystone etc. Co.* v.
*Dole,* 43 Mich. 370; *Beebee* v. *Johnson,* 19 Wend. 499.)

G. W. Zartman, for Respondent.

The findings justify the rescission. (Civ. Code, sec. 1689;
*Garberino* v. *Roberts,* 109 Cal. 125.)

CHIPMAN, C.— Action to rescind an agreement for the sale of land. Plaintiff had judgment, from which and from the order denying his motion for a new trial defendant appeals.

The land in question was part of a much larger tract belonging to one Vaughan, who had mortgaged it to plaintiff. Foreclosure suit was begun September 8, 1896, and the land was sold under decree on March 20, 1897, plaintiff becoming the purchaser. A certificate of sale was issued to plaintiff, reciting, among other things, that if no redemption was made he would be entitled to a deed in twelve months from date of sale, and a deed was made to plaintiff on March 20, 1898. The Vaughan mortgage was made prior to the amendment to section 702 of the Code of Civil Procedure, extending the period of redemption from six months to one year, and, as matter of law, Tuohy, plaintiff, was entitled to a deed September 20, 1897. (*Savings Bank etc.* v. *Barrett*, 126 Cal. 413; *Benson* v. *Bunting*, 127 Cal. 532;[1] *Haynes* v. *Tredway, ante,* p. 400; *Barnitz* v. *Beverly,* 163 U. S. 118.) This present action was commenced September 13, 1897, seven days before plaintiff's right to a deed accrued. The contract sought to be rescinded was dated August 12, 1897, one month before the action was commenced. At this time Vaughan's right of redemption had only a month and seven days to run. On August 30, 1896, a week before complaint on foreclosure was filed, and in anticipation of foreclosure, Vaughan executed to plaintiff, Tuohy, an agreement, in writing, authorizing Tuohy, mortgagee, to take possession of the mortgaged premises, " and, during the proceedings about to be commenced by said John Tuohy to foreclose the mortgage held by him on said property, and during the period of redemption from the sale of the property from such foreclosure sale, . . . to farm said lands, . . . to rent the same to others, as he may deem best, . . . to collect and receive all rents . . . during the period from the commencement of said suit until the said period of redemption shall have expired, and to pay said rents . . . to the person . . . purchasing said property at foreclosure sale." Notwithstanding plaintiff had this privilege, he asked for the appointment of a receiver, on filing his complaint in foreclosure, with power to do what by the mortgagor's agreement he was himself empowered to do; and a receiver was appointed to take control of said

[1] 78 Am. St. Rep. 81.

mortgaged property, and " to rent the said lands, and collect
and receive the rents, issues, and profits thereof." The receiver
was plaintiff's nephew, and plaintiff was one of his bondsmen.
Pursuant to the order of his appointment, the receiver took
control of the lands, and the court found that at the time the
agreement in question was executed he had leased all the
farming lands mentioned in the agreement, " to be farmed to
grain for the next ensuing cropping season." There was no
evidence that defendant had actual knowledge that these leases
had been made, and there was no evidence that he had actual
knowledge of the appointment of a receiver when the agree-
ment was executed, or that he would interfere in any way with
the parties in carrying it out; but there was evidence offered that
the parties talked the matter over after the agreement was exe-
cuted, which latter evidence the court apparently disregarded
as irrelevant and inadmissible. The court found, however, as
was alleged in the complaint, " that at the time of making the
aforesaid agreement, said John Tuohy believed that said re-
ceiver would make no opposition to the carrying out of the
terms and conditions of said agreement by either party thereto,
and believed that, as the purchaser of said property at the
foreclosure sale thereof, he had the right to contract to convey
said lands, and to lease the same according to the terms of
said agreement." The agreement showed that both parties
had in mind the foreclosure sale, for it was provided, inas-
much as plaintiff had purchased the land at foreclosure sale,
and the right of redemption had not elapsed, that in case
of redemption defendant should be paid by plaintiff for his
improvements made under the agreement. Adjoining the
land in question were other lands sold to plaintiff, on which
was a basin excavated to contain water for irrigation, and a
cut or trench had been opened on this adjoining land to de-
velop water, and in the agreement defendant had undertaken
within thirty days to begin an extension of the trench and run
it fifteen hundred feet, by August 1, 1898, to the land embraced
in his contract. He had the right, also, to dig certain wells on
these latter lands, near said trench, for the purpose of develop-
ing water. The agreement is very lengthy, and sets forth with
considerable minuteness of detail the mutual covenants of the
parties, a large part of which may be omitted from considera-
tion, as not bearing upon the issues presented. It recited,

however, that defendant believed that parts of the land described were suitable for citrus culture, and on the conditions named plaintiff agreed to sell to defendant, "during and for six years to come, . . . whenever and from time to time he is requested by him to do so, any of said lands heretofore described in T. 20 S., R. 27 E., lying below the line of the flume or ditch which said Moore proposes to construct from said basin to said land," and "when said Moore asks it, said Tuohy will put him in the immediate possession of any land thus required by him, and said Moore shall have the option to pay for such land," etc., stating terms; and the agreement also contained a plan of rental to defendant, instead of sale. It was recited, that although the water already developed was insufficient for the purpose, defendant was to at once locate and take on the rental plan and plant to orange trees the greater part of one hundred acres, and "proceed at once, as before stated, to extend said cut, and within the time fixed to sink at least one well."

The contract recited a consideration of one dollar as paid and received, but the evidence was that it was not in fact paid or received, and the complaint alleged that plaintiff has never received any consideration. The complaint alleges what has heretofore been stated as to plaintiff's belief that the receiver would not make opposition; alleges the agreement to take on the rental plan one hundred acres, and at once plant the greater part to orange trees; alleges the refusal of the receiver "to permit either plaintiff or defendant to enter upon said land to carry out the conditions of said agreement; that plaintiff cannot give defendant any title to said lands that will be free from reasonable doubt until the time to redeem said lands shall have expired, nor can it be ascertained until a deed shall issue to said lands whether plaintiff will ever have the legal right to any of said lands"; alleges that as soon as plaintiff discovered "that said receiver would not permit said agreement to be carried out, . . . he immediately communicated such fact to defendant, and requested of him that said contract be rescinded." The findings are that plaintiff's allegations are true. The court found, in its third finding, that the receiver was appointed to take charge of the property, rent it, etc., "during the pendency of the action, and until a deed should issue to said lands, and until the same had been redeemed as required by law." This finding is challenged as

unsupported by the evidence. The order of appointment contains no such provision, and no tenure of the receiver's office is stated in it. The fact is, perhaps, not important, as the receiver holds subject to removal at any time by the court, on cause shown.

It is claimed by appellant, also, that the fourth finding, as to plaintiff's belief that the receiver would not oppose the carrying out of the terms of the agreement, is not supported by the evidence. Under the view we take of the case, as will presently appear, this finding furnished no ground for rescission, and its consideration may for the moment be deferred. The fifth finding is, that defendant " has not located or taken on the rental plan, or any other plan, any portion of said lands, or planted the same to orange trees, or proceeded to extend said cut, or to perform any of the other conditions of said agreement." This finding is challenged as unsupported, and will also be noticed later. The sixth finding is, that the receiver refused to permit either plaintiff or defendant to enter on the lands to carry out their agreement, and that plaintiff could not give defendant any title free from doubt until redemption had expired, and until a deed should issue, plaintiff could not know he had any title. This finding is also challenged as unsupported. The seventh finding is that plaintiff communicated the receiver's refusal to permit the agreement to be performed immediately on learning the fact, and at once requested rescission, and this finding is challenged for like reasons.

There was a general demurrer to the complaint, which was overruled, and defendant answered, and there was a motion for nonsuit, at the close of plaintiff's evidence, which was denied. We will dispose of the case, however, on its merits as disclosed by the evidence.

There seems to me an utter want of equity in the case made by the record. The uncontradicted evidence was, that, immediately following the execution of the agreement, defendant made preparations to carry out its provisions on his part. He contracted for twelve thousand orange trees, which he had to pay for; he made a contract for teams to do the ditch-work; he made arrangements for an engine to pump water; he engaged a surveyor and helper to locate the cut which he had agreed to make, and he went with them to the land, to assist in the survey. He testified: " Mr. Tuohy [the receiver] ap-

proached on a horse, and said, 'What are you doing here?' I said, 'Laying out a ditch, and we are going over there to open a cut.'—'Well,' said he, 'you can't do that; you must leave this ranch; I don't wish you to do any work of any kind here.' I said, 'This is Mr. Tuohy's contract that we have.' He says, 'It don't make any difference; you must not do any work here,' or words to that effect. I could scarcely believe it, and I said, 'Do you mean it?' He said, 'Yes.'" Defendant then left with his men. He further testified: "I have been at all times since this contract was entered into ready and willing and able to carry out all the covenants on my part contained therein. I wrote to Mr. Tuohy, the plaintiff. I tried to get to see him, and could n't. I sent twice to his house. I sent a special messenger with a letter, and nobody would receive it. I wrote him a letter and mailed it to him, because I was in a terrible position with twelve thousand orange trees on hand." It appears that plaintiff wrote a letter to defendant, informing the latter that the contract " cannot be carried out, on account of the refusal of the receiver in charge of said property to permit entry on said lands prior to the time a deed to said lands will issue, which he is advised will be one year from the time of the issuance of the certificate of sale," adding, " As it will be impossible for either of us to carry out the terms of said agreement, I ask that you consent that said contract be rescinded, and hereby offer to rescind the same." This letter was dated August 19, 1897, sixteen days after the contract was signed, but the letter was not posted until August 26th, as the post-mark on the envelope showed. Defendant replied to it, September 4, 1897, refusing to rescind, calling attention to the steps he had taken to comply with the contract, and stating his readiness, ability, and willingness to comply with the contract, and insisting on compliance by plaintiff. This letter was properly directed to plaintiff, and posted, and postage prepaid, but he testified that he did not receive it. There is no evidence that plaintiff made any effort to induce the receiver to permit the defendant to do the work contemplated by the parties; plaintiff took no steps to obtain instructions or authority of the court for the receiver to permit the work to be done; there is no evidence that the contemplated work would have interfered with any leases made by the receiver; foreclosure was commenced in September, 1896; the leases for that cropping year ran until the latter part of the year 1897; there was

no evidence that plaintiff sought to have the leases so made in renewal as not to interfere with his own or defendant's performance; he had it in his power to do this, and is himself at fault for not having done it. Nor is the evidence clear that the leased lands embraced all the lands which might have been planted to orange trees; there is no evidence that plaintiff made any effort to purchase Vaughan's equity of redemption; in short, there is no evidence that plaintiff made the slightest effort to remove the impediments to performance of the contract, and, with the exception of the refusal of the receiver to allow the work to be done by defendant, there is no ground for rescission shown. Whether the refusal of the receiver to allow defendant to proceed under his contract, of which plaintiff had instant, if not previous, knowledge, operated as a release of defendant, need not be decided, for he is not asking to be released. It did not release plaintiff, and he should not be permitted to rescind, since he failed to show that it was impossible for him to perform. The rule is, that "the impossibility of performance must be shown to attach to the thing to be done, and not to him alone who has contracted to do it. It must be an *impossibilitas rei*, as distinguished from an *impossibilitas facti*." (*Fresno Milling Co.* v. *Fresno Canal etc. Co.*, 126 Cal. 640; citing *Klauber* v. *San Diego Street Car Co.*, 95 Cal. 353, where the rule is quite fully discussed.) Plaintiff not only made no effort to render performance possible, but he made haste to notify defendant of rescission, not even going to him personally to see what could be done to enable each to perform. The ground alleged in the complaint for relief is, that the receiver "refused to permit either plaintiff or defendant to enter upon said land to carry out the conditions of said agreement." When plaintiff learned this fact, he should have gone at once to the receiver and made an effort to remove his opposition, failing in which he should have gone to the court and had the receiver removed or instructed to permit the work to go forward, which was manifestly for the benefit of the land. There was, in fact, no occasion for a receiver, and had the defendant in the foreclosure suit objected on the ground that he had given plaintiff authority to go into possession and do the very things the receiver was appointed to do, the court would probably not have appointed a receiver. Furthermore, there were but a few days remaining in which redemption could be made, and plaintiff would be en-

titled to a deed. Plaintiff should have made some effort to acquire this equity, or arrange with the holder of it, and if unsuccessful, he should have waited these few days, taken his deed, which would have discharged the receiver, and there would have been no further obstruction to his performing. It would be inequitable to allow plaintiff to rescind under the facts of this case, all of which point to his own delinquency, rather than that of defendant, and especially should he not be permitted to rescind, as defendant suffered considerable damage, which plaintiff made no offer to compensate.

It is advised that the judgment and order be reversed.

Smith, C., and Gray C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

Harrison, J., Garoutte, J., Van Dyke, J.