[L. A. No. 3881. Department One.—January 30, 1917.]

EUCALYPTUS GROWERS ASSOCIATION (a Corporation), Respondent, v. ORANGE COUNTY NURSERY AND LAND COMPANY (a Corporation), Appellant.

EUCALYPTUS GROWERS ASSOCIATION (a Corporation), Respondent, v. ORANGE COUNTY NURSERY AND LAND COMPANY (a Corporation), and AMERICAN SURETY COMPANY OF NEW YORK (a Corporation), Appellants.

CONTRACT—ACTION FOR BREACH—AFFIRMATIVE DEFENSE—EXCUSE FOR NONPERFORMANCE — PLEADING.—In an action for the breach of a contract, matters which fall within the category of excuses for nonperformance and which are not apparent on the face of the contract, nor embraced within the facts alleged in the complaint, are matters of defense, and, to be available to the defendants, must be set up in the answer, and where they are not, they cannot be advanced in support of an appeal, or as a reason why a new trial should not have been granted.

ID.—CONTRACT TO PLANT EUCALYPTUS TREES—MISREPRESENTATION NOT INDUCING EXECUTION OF CONTRACT — PROPER GRANTING OF NEW TRIAL.—In an action for the breach of a contract to plant, irrigate, cultivate, and care for eucalyptus trees, and guaranteeing that at the end of a certain period there should be a certain number of trees standing in good condition on the land, it is proper to grant a new trial upon the ground that the evidence did not show that certain misrepresentations concerning absence of alkali from the land, alleged to have been made by plaintiff, were made to induce the execution of the contract.

APPEAL from an order of the Superior Court of Los Angeles County granting a new trial. Fred V. Wood, Judge presiding.

The facts are stated in the opinion of the court.

Williams, Goudge & Chandler, for Appellants.

Jones & Evans, and Earl T. Miller, for Respondent.

SHAW, J.—The two actions above entitled relate to the same contract and the same controversy. With the consent

of the parties and by order of the court, they were consolidated for the purposes of trial, findings, and judgment. The judgment being for the defendants, the plaintiff moved for a new trial. The motion was granted and the defendants appeal from the order.

The object of the action was to recover damages alleged to have been caused to plaintiff by the failure of the defendant, Orange County Nursery and Land Company, to perform a contract with the plaintiff whereby it agreed to plant, irrigate, and cultivate eucalyptus trees in parcels of not less than eighty acres at one time, on a certain tract of land belonging to the defendant. The American Surety Company is made a party defendant to the second action solely for the reason that it became surety for the Nursery Company on a bond in the sum of nine thousand five hundred dollars, executed by it to the plaintiff for the faithful performance of the contract. Otherwise the two actions are based on the same facts.

The contract sued on provided that the Nursery Company should plant five hundred and fifty thousand eucalyptus trees, at least six inches in height, on section 17, township 29 south, range 25 east, in Kern County, the same to be planted in parcels of not less than eighty acres each, one parcel to be completely planted before another was begun, to irrigate, cultivate, and care for such trees for one year from the time of planting, the irrigation to include the running of the water through the main and lateral ditches to be made by the plaintiff on the land, from the pumping plants to be installed thereon by the plaintiff, and that the Nursery Company would guarantee that there should be standing in good condition on the land so planted, at the end of one year from the planting thereof, an average of at least 817 trees per acre.

The plaintiff thereby agreed to install the necessary pumping plants and machinery and dig the main and lateral ditches required for the irrigation of the trees, to plow the land, to level it so far as was necessary to render it practically irrigable from such main and lateral ditches, and to pay the Nursery Company at the rate of $30 per acre for each acre so planted and cultivated, for the planting and care thereof for said year.

The complaint alleged that the Nursery Company planted the trees on only 160 acres of said tract, that it then abandoned the contract and refused further performance, that it failed properly to care for or cultivate the trees planted, or to have standing and in good condition at the end of the year 817 trees per acre thereon, that not more than thirty acres had as many as 300 trees to the acre remaining alive, that when so abandoned the land was worth less than if no trees had been planted thereon, and that the plaintiff was damaged in the sum of nineteen thousand, two hundred dollars, besides certain moneys expended, by reason of the failure of said Nursery Company to fulfill said contract.

The answer admits the execution of the contract and the planting of the trees on 160 acres of the land, but denies the want of care on the part of the Nursery Company in the cultivation or irrigation thereof, and the other allegations as to its failure to perform and as to damages. As an affirmative defense it alleges that at the time the contract was made, and ever since, the 640-acre tract of land was so impregnated with alkali that it was unfit for the culture and raising of eucalyptus trees, that plaintiff then well knew said fact but concealed the same from said defendants and represented to said Nursery Company that a thorough expert examination of the soil had been procured by plaintiff and that the same was suitable and fit for the raising and culture of eucalyptus trees; that after the Nursery Company began the irrigation of the trees so planted, and about September 1, 1909, the alkali in the soil killed the trees, and that this rendered the further planting of trees in said soil useless.

The court found that prior to the execution of the contract the plaintiff, to induce the Nursery Company to execute the same, stated to said Nursery Company that said plaintiff "had had said land examined for alkali; that it was suitable for eucalyptus trees, and did not contain alkali in sufficient quantities to affect such trees"; that both parties in good faith believed that said land was suitable for such trees and did not contain sufficient alkali to affect them, and they both acted on that belief; that in fact plaintiff had obtained no analysis of the soil, and had no information sufficient to warrant it in making said statements to the Nursery Company; that the land was so fully impregnated with alkali that it

was impossible to grow eucalyptus trees thereon as required of the Nursery Company by the contract.

These findings tend to establish the defense that the contract had been procured by fraud on the part of the plaintiff. It may here be observed that the answer does not allege that the defendants believed these representations to be true, nor that they relied on them in executing the contract, and there is doubt if the fraud is well pleaded. In an opinion included in the transcript the court below stated that the new trial was granted on the ground that the evidence did not show that the above-quoted misrepresentation was made to induce execution of the contract. The defendants, as we understand their brief, concede that the statement in question was not made until after the contract was made and, hence, that it did not induce its execution, and that the finding that it was made for that purpose is not sustained by the evidence.

This would support the order granting the new trial, unless, as defendants contend, there are other facts found which are supported by the evidence, upon which the judgment in their favor may rest, without aid from the finding as to fraud.

Giving the findings a liberal interpretation in favor of the defendants, these facts are as follows: Both parties, when they executed the contract, believed that the soil was suitable for eucalyptus trees and they knew nothing to the contrary. The contract was made by both parties on the faith of the assumed fact that eucalyptus trees would grow well on the land, if planted, irrigated, and cared for after the usual manner of good husbandry. In fact, it was so full of alkali that such trees would not grow thereon, unless the alkali were eliminated from the soil. This could not be done except by grading the surface and then flooding it with a large body of water so as to dissolve the alkali and then to carry it away by allowing the water to run off. Under the terms of the contract, interpreted by the aid of surrounding circumstances and the subsequent conduct of the parties with reference to it, the plaintiff was to furnish pumping plants, including the wells, of capacity sufficient to obtain the water that would be required to enable the Nursery Company to carry out the contract. Plaintiff was also to do the leveling of the land necessary for that purpose. It did not level or grade the land so that it could be flooded to dissolve the alkali, nor

did it install pumping plants that would supply the water to do the flooding. The water the pumps would raise was barely enough to moisten the soil of the 160 acres that was planted. With the means at hand, including everything that was to be done by the defendants, and without the other things aforesaid to be done and furnished by plaintiff, but which it did not do or furnish, it was impossible to grow eucalyptus trees on the land and have them standing in good condition at one year from the planting, or at all.

The defendants cite no authorities, nor do they clearly state their position. Apparently, as we surmise, they rely on one or more of three propositions: 1. That where one party to a contract, by the failure to perform his part thereof, renders the subsequent performance by the second party impossible, the second party is excused from further performance and is not liable in damages for any breach on his part thus brought about. (Civ. Code, sec. 1511; *Griffith* v. *Happersberger,* 86 Cal. 605, 613, [25 Pac. 137, 487]; *Houghton* v. *Steele,* 58 Cal. 421, 425; *Antonelle* v. *Kennedy etc. Lumber Co.,* 140 Cal. 309, [73 Pac. 966]; *Tuohy* v. *Moore,* 133 Cal. 523, [65 Pac. 1107].) 2. Where parties contract with respect to a subject matter, upon the assumption that it exists and is of the character necessary to the doing of the things agreed to be done upon it, and it turns out that it does not exist at all, or that it has not the qualities supposed and necessary, so that the doing of the thing contracted for is, in the real state of the case, impossible, neither party is bound to its performance. Thus, in *Clifford* v. *Watts,* L. R. 5 Com. P. 585, the defendant had leased plaintiff's land, believed to contain pipe-clay, and had agreed to dig annually therefrom one thousand tons of pipe-clay. To a suit for the royalties upon the clay which defendant had agreed, but failed, to dig, the defendant pleaded that it was impossible to do so, for that the land did not contain so much, and that this was not known to him at the time of contracting. This was held to be a good defense. Willis, J., said: "I am not prepared to say that there may not be cases in which a man may have contracted to do something which in the present state of scientific knowledge may be wholly impossible, and yet he may have so contracted as to warrant the possibility of its performance by means of some new discovery, or be liable in damages for the nonperformance, and

cannot set up the defense that the thing was impossible. But, before we arrive at such a conclusion, we must be satisfied, if no other reasonable construction suggests itself, that the party really did intend to warrant that to be possible which was impossible." And Brett, J., said: "Here both parties might well have supposed that there was clay under the land. They agree on the assumption that it is there, and the covenant is applicable only if there be clay; it does not amount to a warranty on the part of the grantee that there was clay, or to an engagement to pay the royalty although it should turn out that there was none." (See, also, *Mineral etc. Co.* v. *Howard,* 172 Cal. 289, 291, [L. R. A. 1916F, 1, 156 Pac. 458] ; *Nordyke* v. *Kehlor,* 155 Mo. 643, [78 Am. St. Rep. 600, 56 S. W. 287] ; *Stewart* v. *Stone,* 127 N. Y. 507, [14 L. R. A. 215, 28 N. E. 595] ; *Dexter* v. *Norton,* 47 N. Y. 65, [7 Am. Rep. 415].)   3. That the contract and guaranty was executed in consequence of a mistake as to the quality of the soil, either a mutual mistake or a mistake of the Nursery Company which was known or suspected at the time by the plaintiff. (Civ. Code, secs. 1577, 3399.)

These propositions do not aid the defendants as the case now stands. Assuming them to be sound in law, which we need not decide, they fall within the category of excuses for nonperformance, and they are excuses not apparent on the face of the contract, nor embraced within the facts alleged in the complaint. They are, therefore, matters of defense, and to be available to the defendants they must be set up in the answer. The answers contain no allegations of the facts necessary to support either of these propositions. It follows that they cannot be advanced in support of this appeal, or as reasons why a new trial should not have been granted. The court below was correct in granting the new trial because of the failure to prove the only matter of defense which the defendants had attempted to plead.

Before proceeding with the new trial the defendants should have leave to amend their answers as they may be advised.

The order granting a new trial is affirmed.

Sloss, J., and Lawlor, J., concurred.