ROBERT J. JONES, APPELLANT, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLEE.

FILED DECEMBER 14, 1918.  No. 20217.

1.  Carriers: CONVERSION: DELIVERY TO OWNER. When freight, in the possession of a railroad company for shipment, is claimed by different parties, it must be delivered to the true owner entitled thereto. It is a complete defense to an action of conversion against that company that it has so delivered it.

2.  Contracts: MISTAKE: PASSING OF TITLE. When "a person contracts with another believing him to be one with whom he intends to contract, while as a matter of fact it is another person, there is no agreement." 35 Cyc. 60. The Washburn-Crosby Company, having a contract with one Furman to sell him flour at an agreed price, by mistake entered the contract as with Jones, and shipped the flour with draft on Jones, who paid the draft and demanded the flour. The Washburn-Crosby Company had discovered the mistake and stopped the delivery to Jones. Held, that this did not pass the title in the flour to Jones.

3.  Estoppel: TENDER: WAIVER. In such case, if Jones pays the draft to the agent of Washburn-Crosby Company, it cannot retain the money and keep the flour; but, if the company duly offers to return the money, and keeps the offer good, and the offer is refused by Jones, it will amount to a waiver of a formal legal tender.

4.  Trial: DIRECTION OF VERDICT. When there is no substantial conflict in the evidence, it is the duty of the trial court to direct a verdict.

APPEAL from the district court for Lancaster county: P. JAMES COSGRAVE, JUDGE. *Affirmed.*

*O. B. Clark,* for appellant.

*Byron Clark, Jesse L. Root, W. Paul Moorhead* and *Strode & Beghtol, contra.*

SEDGWICK, J.

The plaintiff brought this action in the district court for Lancaster county to recover the value of a car-load of flour alleged to have been converted by the defendant. The flour was shipped by the Washburn-Crosby Company of Minneapolis, and a controversy arose between that company and the plaintiff as to the right to the flour. It was the duty of the defendant railroad company to deliver the flour to the true owner, and it was delivered to the Minneapolis company. The question, then, is whether the Minneapolis company or this plaintiff was the owner of the flour and entitled to the delivery thereof. The court instructed the jury to find a verdict for the defendant, which was done, and judgment entered thereon, and the plaintiff has appealed.

The Minneapolis company had contracted the flour to one Furman, of York, some time before the shipment. In the meantime the price of flour had advanced to nearly double the contract price to Furman. By mistake of the company the Furman order had been entered as an order of this plaintiff, and it was by mistake shipped to Lincoln, consigned to the shipper's order, with instructions to notify the plaintiff. A draft for the price of the flour as contracted to Furman was attached to the bill of lading, and when this plaintiff was notified he paid the draft and demanded the flour. In the meantime the Minneapolis company had instructed the railroad company not to deliver the flour to the plaintiff, and to return the flour to the shipper at Omaha, which the railroad company did.

"Where a person contracts with another believing him to be one with whom he intends to contract, while as a matter of fact it is another person, there is no agreement, as where  *  *  *  a person obtains goods by fraudulently impersonating a third person to whom the owner supposes he is selling, or by pretending to be the agent of a third person to whom the owner supposes he is selling." 35 Cyc. 60. It appears that the Minneapolis company supposed it had contracted this flour to this plaintiff, when, as a matter of fact, it had contracted to Furman, and did not ship the flour as an offer to sell to the plaintiff, and had no intention of making a contract of sale with the plaintiff. The minds of the parties, therefore, never met so as to amount to a contract of sale. The plaintiff concedes that he had not ordered these goods, but testifies that he had instructed his son to order flour, and when he was notified of the shipment of this flour he supposed in good faith that it was in response to an order by his son. Thus it appears again that the minds of these parties had never met in the making of a contract of sale.

The draft, with the bill of lading, however, was drawn upon the plaintiff, and the price named was paid by him, and the draft and bill of lading delivered to him. The Minneapolis company could not retain the payment for the flour, and at the same time stop the delivery of the flour to the plaintiff. Upon this point, however, the plaintiff himself testifies that "Mr. Biddleton (cashier of the bank to which he had paid the money) came in a few days after the 27th, came to me and asked me if I would surrender the draft and the bill of lading, and I told him, 'No; I didn't think I would. I considered I had bought that car of flour, and was going to hold them to the contract.' " The evidence of the defendant that the money was placed to the credit of the plaintiff, and that he continually refused to receive it, is not contradicted by the plaintiff. This would amount to a

waiver of a formal tender of the money, and there seems to be no complaint in the briefs that the tender was insufficient, or that it had not been maintained. Under these circumstances, there was no question of fact in dispute, and the court was right in instructing a verdict for the defendant.

AFFIRMED.

LETTON and ROSE, JJ., not sitting.