**K. TIDEMAN & CO. et al. v. McDONALD.** *
(No. 202.)

(Court of Civil Appeals of Texas. Waco. Aug. 6, 1924. Rehearing Denied· July 6, 1925.)

1. **Limitation of actions** ⊜127(1) — **Court properly refused to submit issue of limitations, where original petition filed before cause barred by statute.**

Where original petition was admittedly filed before cause was barred by statute of limitations, and amended petition did not set up any new cause of action, it was not error for court to refuse to submit question of limitations to jury.

2. **Sales** ⊜384(7)—**Instruction charging damages to be difference between market value of cotton at time of sale to defendants and at time of sale thereafter held not error.**

In action for damages claimed by reason of defendants' failure to accept cotton sold them by plaintiff, instruction by courts that damages would be the difference between the market value of the cotton at the time plaintiff sold the same to defendants and at the time plaintiff sold same thereafter, *held* not error.

On Rehearing.

3. **Sales** ⊜379—**To avoid contract for mistake, that fact should be pleaded and proved as an affirmative defense.**

In action for damages for failure of defendants to accept cotton sold by plaintiff, where defendants contended that their agent thought he was dealing with another party, it was not error to refuse an instruction that, if jury believed defendants' agent entered into contract believing that he was contracting with another they should find for defendants, inasmuch as defendants did not plead nor prove such mistake affirmatively, for in order to avoid a contract for mistake it should be pleaded and proved as an affirmative defense.

Stanford, J., dissenting.

Appeal from McLennan County Court; Giles P. Lester, Judge.

Action by S. McDonald against K. Tideman & Co. and another. From a judgment for plaintiff, defendants appeal. Affirmed.

See, also, 240 S. W. 1050.

Nat Harris, of Waco, for appellants.
Tirey & Tirey, of Waco, for appellee.

BARCUS, J. This suit was instituted by appellee against appellants, a copartnership, and J. Ed Brown, to recover damages which appellee claimed he had suffered by reason of appellants having refused to accept and pay for 100 bales of cotton which appellee alleged he sold appellants through their agent, J. Ed Brown. Appellee alleged that he sold said cotton over the telephone on October 8, 1920, at 20¾ cents per pound, and that appellants failed and refused to accept same, or to comply in any way with their contract, and that he sold same on October 13, 1920, at 18⅞ cents per pound, which was the highest and best price he was able to obtain therefor. He alleged that the cotton was sold to appellants according to the rules of the Texas Cotton Association. Appellants answered by plea of limitation, general demurrer, and general denial. The court instructed the jury to return a verdict in favor of J. Ed Brown, and submitted the cause as between appellants and appellee upon a general charge. On the jury's verdict, judgment was rendered for appellee against appellants for $875.

Appellants, by their first ·assignment of error, complain of the trial court's refusal to peremptorily instruct the jury to return a verdict for them, on the ground that the evidence shows there was no contract made between the parties. The evidence shows that on October 8th, appellee, at Comanche, called Mr. Brown, the agent of appellants, at Waco, over long-distance telephone, and sold him for appellants 100 bales of cotton at 20¾ cents per pound. Mr. Brown testified that he bought the cotton, but he thought at the time he was buying from a Mr. Brightman at Comanche, and that he immediately after the telephone conversation, by letter to Mr. Brightman, confirmed the purchase of the cotton. The cotton was purchased by Mr. Brown in the afternoon of Friday, after the market for the day had closed, and the following morning Mr. Brightman, before 8 o'clock, called Mr. Brown over the phone and informed him that he had the confirmation, but that there was a mistake, since he (Brightman) had not sold him the cotton. Mr. Brown testified that he told Mr. Brightman that he had purchased 100 bales of cotton from some one at Comanche the day before. He then purchased from Mr. Brightman 100 bales of cotton at 20¼ cents per pound, which was a half cent less than he had purchased cotton from appellee the day before. The evidence shows that there were only three men in Comanche who were buying cotton, Mr. Brightman, appellee, and a Mr. Levy. Mr. Brown was the general representative and agent for appellants in Central Texas, buying cotton for them. After Mr. Brown learned he was mistaken about having purchased the cotton from Mr. Brightman, he made no effort to find out from whom he had purchased the cotton at Comanche. He did not inquire of the other cotton men there, nor of the telephone company, as to whom he had talked. About the time the market closed on Saturday, appellee, from Comanche, called Mr. Brown over the telephone at Waco for the purpose of selling him some more cotton, and in the conversation told Mr. Brown that he did not get the confirmation for the 100 bales by the morning's mail. Mr.·Brown at that time told ap-

pellee that he had not purchased the cotton from him, that he thought he was purchasing it from Mr. Brightman, and refused to carry out the contract. There was no dispute about Mr. Brown and appellee having had the conversation over the telephone on Friday and about Mr. Brown having purchased the cotton. The only controversy was whether Mr. Brown thought he was buying it from Mr. Brightman, rather than from appellee.

It is true, under the general rules of law, a person has a right to select with whom he will trade and with whom he will do business. It is equally true that he who seeks equity must do equity. The evidence in this cause shows that all the parties were experienced cotton men, and that the cotton business is handled to a large extent by telephone. The cotton in this cause was the standard grade, and was purchased and sold under the rules of the Texas Cotton Association, to be paid for on delivery. Appellants did not, in their answer, claim they would not have dealt with appellee, or that they had been in any way injured, or that they were mistaken in the identity of the parties, and did not allege any facts that would justify them in failing and refusing to carry out the contract which their agent admittedly made. There is no pleading or evidence of any fraud on the part of appellee in his dealing with appellants. Appellants, after the evidence was closed, for the first time raised the defense of mistaken identity with reference to the party with whom they thought they were dealing. If appellants desired to avoid the contract which they had made because of mistaken identity, it was necessary and incumbent upon them to allege and prove same. An affirmative defense must be pleaded and proved. Mims v. Mitchell, 1 Tex. 443; Paul v. Perez, 7 Tex. 338; Scarbrough v. Alcorn, 74 Tex. 358, 12 S. W. 72; Moody & Co. v. Rowland, 100 Tex. 363, 99 S. W. 1112.

[1] By their second assignment of error, appellants complain of the trial court's refusal to submit the question of limitation. We overrule this assignment. The original petition was admittedly filed before the cause was barred by limitation, and the amended petition does not set up any new cause of action.

[2] By their third assignment of error, appellants complain of the court's charge with reference to the measure of damages. The court instructed the jury that plaintiff's damages if any would be:

"The difference between the market value of such cotton at the time plaintiff sold same to the defendants on October 8, 1920, and the market value of such cotton at the time plaintiff sold same on October 13, 1920, and such difference will be the amount of your verdict."

The objection appellants urged to said charge was as follows:

"That it is erroneous and improper in this, that under the law and customs and usage as shown by the evidence, plaintiff was required to minimize the damages, and the evidence indisputably shows that defendant repudiated the alleged contract on the 9th of October, 1920, and it became and was the duty of plaintiff to sell said cotton immediately so as to reduce the damages, if any, and, failing to do so, he is not entitled as a matter of law to receive the difference between the market value on the date of the alleged contract and the date on which the cotton was sold."

Appellee alleged and testified that he sold the cotton for the highest price he could obtain. No proof was offered that appellee could have obtained any higher price at any time between the 9th and the 13th of October. There was no contention on the part of appellants in their testimony that the appellee did not in every way possible minimize his damages. There was no request on the part of appellants that said issue be submitted to the jury. We overrule this assignment. World's Special Films Co. v. Fichtenberg (Tex. Civ. App.) 176 S. W. 733; San Jacinto Rice Co. v. Ulrich (Tex. Civ. App.) 214 S. W. 777; Alamo Dressed Beef Co. v. Yeargan, 58 Tex. Civ. App. 92, 123 S. W. 721.

We have examined all of appellants' assignments of error, and same are overruled. The judgment of the trial court is affirmed.

### On Rehearing.

[3] Appellants, in a very able motion for rehearing, insist that we were in error in holding that there was no error in the trial court's refusal to give the following special charge requested by them:

"You are instructed that if you find and believe from the evidence that the defendants, acting by and through their agent, J. Ed Brown, entered into the contract as alleged by the plaintiff, under a mistake as to the party with whom he was dealing, then and in that event your verdict will be for the defendant."

We have carefully read the authorities cited by appellants and all of the authorities that are at our command bearing on said question. Appellee alleged that he made a contract with appellants, by which he sold, and appellants, acting by their agent, J. Ed Brown, purchased, 100 bales of cotton over the telephone. The only answer of the appellants was limitation and a general denial. Appellee testified that from Comanche, Tex., he called Mr. Brown at Waco over the telephone, and that they entered into a contract whereby he sold and Brown purchased for appellants 100 bales of cotton at 20¾ cents per pound f. o. b. Comanche. Brown testified that he had the conversation and made the contract, but thought at the time he was making it with Mr. Brightman at Comanche, and that he at once mailed to Mr. Brightman a confirmation of the purchase.

Mr. Brightman testified that the following morning, about 7:30, when he received the confirmation, he called Mr. Brown at Waco and informed him that he (Brightman) had not sold Brown any cotton, and that Mr. Brown told him at that time that he had purchased 100 bales of cotton from some one at Comanche, and that he thought it was Brightman.

There is no conflict in the testimony between appellee and Mr. Brown as to the conversation they had and as to the terms of the contract for the sale and purchase of the cotton. The only defense that Mr. Brown has was that he thought he was buying it from Brightman instead of McDonald. The issue requested by appellant quoted above is based on the theory that the contract was actually made. Appellants now claim that there was no contract because of the mistaken identity of the party on the part of Brown with whom he was dealing. Neither in their objections to the court's charge nor in their requested special issue in the trial court did appellants raise the issue of no contract, but under a general denial they were trying to raise the issue that the contract was void because of mistaken identity on the part of appellants. The universal rule, so far as we have been able to find, is that an affirmative defense must be pleaded, and that, where parties admit they have made a contract, any defense they may have that would avoid the contract must be affirmatively pleaded, in order to apprise the plaintiff thereof before he announces ready for trial. A contract, under certain conditions may be avoided for fraud, accident, or mistake in any essential detail. We have not, however, found an authority which holds that the contract may be avoided for any of said reasons unless said defense is specially pleaded.

In Moody & Co. v. Rowland, 100 Tex. 363, 99 S. W. 1112, by the Supreme Court, the rule is stated as follows:

"The defendant may, by a general denial, put the plaintiff upon proof of the facts alleged in the petition, and, under such general denial, the defendant would be entitled to introduce evidence which tended to disprove the facts alleged in the plaintiff's petition, and to rebut evidence offered by the plaintiff. If a defendant desires to introduce evidence of a fact which does not tend to rebut the facts of the plaintiff's case, but which show an independent reason why the plaintiff should not recover upon the case stated and proved, then such defendant must plead the facts which will avoid the legal consequence of plaintiff's case, else the testimony will not be admissible, and a judgment rendered upon such evidence, admitted under a general denial, will not be sustained. Willis v. Hudson, 63 Tex. 678; Smothers v. Field, Thayer & Co., 65 Tex. 435. * * * The defendant must prepare his pleadings to correspond with the character of proof to be used by him. * * * If the facts alleged are true, and he wishes to explain or avoid them, he must aver, specially, the matters of avoidance or explanation upon which he relies."

13 C. J. 744, lays down the following rule:

"As a general rule, fraud, duress, or undue influence, to be available as a defense to an action on a contract, must be specially pleaded; and the same is true of mistake."

In Eucalyptus Growers' Ass'n v. Orange County Nursery & Land Co., 174 Cal. 330, 163 P. 45, the defendants offered proof to show that the contract sued on was void because of mistakes, and the court, in passing on same, stated:

"These propositions do not aid the defendants as the case now stands. Assuming them to be sound in law, which we need not decide, they fall within the category of excuses for nonperformance, and they are excuses not apparent on the face of the contract, nor embraced within the facts alleged in the complaint. They are therefore matters of defense, and, to be available to the defendants, they must be set up in answer. The answers contain no allegations of the facts necessary to support either of these propositions."

In Conn v. Rosamond (Tex. Civ. App.) 161 S. W. 77, the court states:

"Of course, under allegations of fraud or mutual mistake it would have been permissible for appellees to have shown that the written contract did not express the real agreement between the parties and to have shown what the agreement in fact was; but no such allegations or proof were made."

In volume 2, Standard Ency. of Procedure, pp. 38–43, the rule is laid down that any defense that constitutes new matter or an affirmative defense must be specifically pleaded. To avoid a contract because of mistake, it should be pleaded. Lovelady v. Harding (Tex. Civ. App.) 207 S. W. 933; Detroit Steel Products Co. v. Houston Printing Co. (Tex. Civ. App.) 202 S. W. 984; C. & G. W. Ry. Co. v. Plano Milling Co. (Tex. Civ. App.) 214 S. W. 833; M., K. & T. R. Co. v. Plano Milling Co. (Tex. Com. App.) 231 S. W. 100; Christian v. Dunavent (Tex. Civ. App.) 232 S. W. 875.

Page on Contracts, par. 259, lays down the rule that—

"If the identity of the adversary party is not material, a mistake therein does not affect the validity of the contract."

And then the same writer (paragraph 260) states:

"If the identity of the adversary party is material, no contract exists where one party to the contract is mistaken as to the identity of such adversary party."

In this case, appellants in the trial court defended under a general denial, which only required the plaintiff to establish his cause of action as alleged. The mere fact that ap-

pellants thought they were dealing with Brightman instead of appellee, McDonald, would not necessarily defeat appellee's cause of action. The evidence of Mr. Brown, the agent of appellants, was that he discovered before the cotton market opened on the morning of the 9th that he had not made a contract with Brightman, but he testified that he had made a contract with some other person in Comanche. He made no effort to ascertain who the other party was, and made no effort to save McDonald from loss by reason of McDonald having made the contract with him (Brown). If Mr. Brown had acted with diligence, he perhaps could have ascertained who had talked to him the day before. The evidence shows that there were only three cotton buyers in the town of Comanche, and, if he had not desired to take the cotton because of a mistake, he should have promptly notified appellee and given him an opportunity to have very materially minimized the loss. Instead of making any effort to ascertain appellee's name and to correct what he (Mr. Brown) claimed was a mistake, he permitted the contract which he had made with appellee to go unchallenged or undisputed until after the closing of the cotton market on the 9th and after a heavy decline in the market. The questions of ratification and estoppel, and whether the name of the person selling the cotton was material to the buyer, were all matters that could have properly entered into a defense of mistaken identity if same had been pleaded. We do not think the trial court was in error in failing to give the special issue requested by appellants.

We have again examined all of appellants' assignments of error, and see no reason for changing our original opinion.

The motion for rehearing is overruled.

STANFORD, J. Not being able to agree with my associates in the disposition of appellants' motion for a rehearing in this cause, I hereby file the following dissenting opinion:

After a careful consideration of appellants' motion for a rehearing, the writer is of the opinion this court was in error in affirming the judgment of the trial court, and that this motion should be granted and the judgment of the trial court reversed, and the case remanded on error pointed out in appellants' propositions under their first assignment of error, in both their brief and motion for rehearing, as will hereinafter be set out.

The record discloses that S. McDonald and O. O. Brightman were cotton brokers, residing at Comanche, Tex.; that J. Ed Brown was a cotton buyer at Waco, engaged in buying cotton at Waco for appellants K. Tidemann & Co.; that J. Ed Brown was acquainted with O. O. Brightman, and had bought cotton from him during previous cotton seasons, but that he was not acquaint-

ed with appellee, S. McDonald, and had never had any dealings with him; that on October 8, 1920, some one at Comanche called J. Ed Brown at Waco and proposed to sell him 100 bales of cotton, and J. Ed Brown told said party he would take said 100 bales of cotton at the price agreed upon over the phone. As a matter of fact, it was appellee talking with J. Ed Brown, but J. Ed Brown testified, in substance, that he understood the party to say his name was Brightman, that he thought he was talking to Brightman. Another witness, who heard Brown talking, testified Brown called the party he was talking to "Brightman." This conversation occurred on Friday afternoon. After this conversation, J. Ed Brown mailed a confirmation of said purchase of 100 bales at the price agreed upon to O. O. Brightman, at Comanche. Appellee testified that in said conversation he told Brown his name was S. McDonald. The next morning, Saturday morning, when O. O. Brightman received the confirmation of the purchase from J. Ed Brown, he (Brightman) called up J. Ed Brown and told him about receiving such confirmation, and told Brown he had not sold him any cotton, and Brown insisted he had, and finally said he had bought 100 bales from some one at Comanche, and that he thought it was Brightman. In the afternoon of the same day, Saturday, October 9th, appellee called up Brown and proposed to sell him another 100 bales, but Brown refused to buy, and McDonald then said he had not received the confirmation for the 100 bales he sold Brown the day before, and Brown replied that he had not bought any cotton from him, and he was not going to take it, etc.

Appellee brought this suit, and alleged that—

"On October 8, 1920, the plaintiff * * * sold, over long-distance telephone, to defendants herein * * * 100 bales of cotton; that thereafter the defendants * * * wholly without cause failed and refused to accept said cotton or comply with the terms of said sale, and notified plaintiff that he would not accept said cotton," etc.

Appellee sold the cotton on October 13th at a loss, as he claims, of $1,000, for which he sought to recover and did recover $975. The defendants interposed a general denial. The court charged the jury in general terms:

That, if they "believed from the evidence that plaintiff, on October 8, 1920, sold, over long-distance telephone, to defendants, 100 bales of cotton, and further find that plaintiff was ready, able, and willing to deliver said cotton, and that defendants failed and refused to accept same, and further find that plaintiff sold such cotton on October 13, 1922, on a declining market, then find for plaintiff the difference between the market value of such cotton at the time plaintiff sold same to defendant on October 8, 1920, and the market value on October 13, 1920, and such difference, if any, will be your verdict."

The appellant requested the following special charge:

. . "You are instructed that, if you find and believe from the evidence that the defendants, acting by and through their agent, J. Ed Brown, entered into the contract as alleged by plaintiff under a mistake as to the party with whom he was dealing, then and in that event your verdict will be for defendant."

This special charge was refused, and its refusal is made the basis of appellants' first assignment.

Appellants' first proposition of law, applicable to this case under the above assignment, is:

"Where. a party enters into an apparent agreement with another by long-distance telephone, without coming in personal contact with him, believing him to be another person, there is no meeting of minds, and therefore no binding agreement."

This undoubtedly is a sound proposition of law. It is elementary, in order to make an enforceable contract, there must be a meeting of the minds of the contracting parties as to the identity of the parties, the subject-matter of the contract, and the terms thereof. A party has a right to determine with whom he will contract, and another party, by reason of failure of identification, cannot enforce an apparent agreement where the first contracting party thought he was contracting with another and different person. J. Ed Brown knew Mr. Brightman, had dealt with him before, was willing to buy 100 bales of cotton from him, and thought he was buying from Brightman, but said he would not have bought from appellee, and as soon as he learned 'appellee, and not Brightman, was the party he talked to over the phone, he promptly repudiated the alleged agreement. It is immaterial what his reasons were for not being willing to contract with appellee. He was free to determine with whom he would contract, without any apology or explanation to any one. As I understand, my associates agree to the correctness of the above proposition of law. Boston Ice Co. v. Potter, 123 Mass. 28, 25 Am. Rep. 9; Jones v. Chicago, R. & I. Railroad Co., 102 Neb. 853, 170 N. W. 170; 13 C. J. 378.

The evidence was almost sufficient to establish as an uncontroverted fact that J. Ed Brown, in said telephone conversation, thought he was talking to O. O. Brightman, and thought he was buying 100 bales of cotton from Brightman, and had no thought or intention of buying any cotton from appellee. This probably was a question of fact for the jury, and, if so, was the only question of fact in the case in determining the liability of appellant, and if answered favorably to appellant, would have required a judgment in his favor. The general charge of the court wholly ignored appellant's defense of mistaken identity of the party he talked to over the telephone, and, standing alone, really amounted to a peremptory instruction for appellee. Appellant's special charge No. 3. aptly and correctly presented the law applicable to appellants' defense of mistaken identity, and should have been given. To refuse to give this special charge in connection with the main charge was in effect to deprive appellant of his defense, and was reversible error. But the majority of this court say:

"Appellants did not in their answer claim they would not have dealt with appellee, or that they had been in any way injured, or that they were mistaken in the identity of the parties, and did not allege any facts that would justify them in failing and refusing to carry out the contract which their. agent admittedly made. There is no pleading or evidence of any fraud on the part of appellee in his dealing with appellants. Appellants, after the evidence was closed, for the first time raised the defense of mistaken identity. * * * It was necessary and incumbent upon them to allege and prove same. An affirmative defense must be pleaded and proved."

If appellants did not make any contract with appellee, as the record tends to show, it is wholly immaterial whether or not they would have dealt with him, or whether or not they would have been injured by assuming to carry out a supposed contract they did not make with him. and it was certainly not necessary to allege facts to justify them in refusing to carry out a supposed contract they did not make, or to plead or prove fraud on the part of appellee as an excuse for not performing a supposed contract they had not made. The error the majority of this court has fallen into is in assuming that the contract was made as alleged by appellee. For instance, they say:

"If appellants desired to avoid the contract which they had made because of mistaken identity, it was necessary and incumbent upon them to allege and prove same. An affirmative defense must be pleaded and proved."

This is all true in cases where it is admitted a contract has been made and the effect of same is sought to be avoided, but this rule of law is wholly inapplicable to this case. In this case, the record tends very strongly to show that one of the essential elements of a contract was wholly lacking, and by reason of which no contract was made with appellee; in other words, that the phone conversation never rose to the dignity of a contract. Appellee alleged, in substance, that on October 8, 1920, he sold 100 bales of cotton to appellant, stating price, place of delivery, etc. This was equivalent to an allegation that on October 8, 1920, he entered into a contract with appellant, by the terms of which he sold appellant 100 bales of cotton, etc. Appellant interposed a general denial, which required appellee to prove his contract, and authorized appellant to introduce any

evidence that tended to show such contract was not made. On the trial appellant introduced his evidence, without any objection to its admissibility that shows almost conclusively that in the telephone conversation appellant was intending to and thought he was making a contract with Brightman, and had no knowledge that he was talking to appellee or intention to talk to him. In other words, appellant's evidence tends to show that appellee had no contract with appellant, because one of the essential elements of a contract was lacking. This evidence was admissible under the general denial. Altgelt v. Emilienburg, 64 Tex. 150; Martin v. Mitchell, 32 Tex. Civ. App. 385, 74 S. W. 565; Hardin v. St. L. S. W. Ry. Co. (Tex. Civ. App.) 88 S. W. 440; Moody & Co. v. Rowland, 100 Tex. 363, 99 S. W. 1112; Floresville v. Refining Co., 55 Tex. Civ. App. 78, 118 S. W. 194; G., H. & S. A. Ry. Co. v. Washington, 94 Tex. 510, 63 S. W. 534; McCabe v. Farrell, 34 Tex. Civ. App. 36, 77 S. W. 1049; Woolley v. Canyon (Tex. Civ. App.) 159 S. W. 403; Colorado & Southern Ry. Co. v. Rowe (Tex. Com. App.) 238 S. W. 908; Olsen v. Collins, 75 Neb. 749, 106 N. W. 784; McGill v. Hall (Tex. Civ. App.) 26 S. W. 132; volume 11, Cent. Dig. § 1726. It will be noted the question here involved is not the admissibility under the general denial of the evidence of the mistaken identity of the party to whom Brown talked over the phone, for this evidence was admitted without any objection, and, this evidence having been admitted without objection, and being before the court and jury, it was the duty of the trial court to give effect to same by giving to the jury appellants' special charge No. 3, and the case should be reversed for his failure to give this special charge.