John A. POTUCEK, Trustee of Wilson Sugar and Elevator Company, Inc., Bankrupt, Appellant,

v.

CORDELERIA LOURDES and Cordeleria Santa Ines, Appellees.

In the Matter of Donald L. WILSON and Margie I. Wilson and Wilson Sugar and Elevator Company, Inc., Bankrupt.

No. 6959.

United States Court of Appeals Tenth Circuit.

Nov. 1, 1962.

Rehearing Denied Nov. 30, 1962.

528

Malcolm Miller, Wichita, Kan., for appellant.

Wayne Coulson, Wichita, Kan. (Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Robert J. Hill, and Gerrit H. Wormhoudt, Wichita, Kan., and Hugo T. Wedell and Homer V. Gooing, Wichita, Kan., of counsel, were with him on the brief), for appellees.

Before LEWIS, BREITENSTEIN and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The question is whether, in voluntary bankruptcy proceedings, petitions in reclamation should be allowed on the ground that a mistake in the identity of the purchaser gave petitioners the right to rescind the transactions through which the Bankrupt gained possession of goods sought to be reclaimed. The Referee denied the petitions and the district court reversed.

Appellant is the Trustee of the bankrupt estates of Donald L. Wilson, Margie I. Wilson, and Wilson Sugar and Elevator Company, Inc., which, without objection, were consolidated and treated as one entity, herein referred to as Bankrupt. The appellees, Cordeleria Lourdes, S. A., (Lourdes) and Cordeleria Santa Ines,

S. A., (Santa Ines) are corporations organized under the laws of Mexico, have offices at Yucatan, Mexico, and fabricate sisal products including baling and binding twine. The law of Mexico vests control over twine exportation in the Secretary of Industry and Commerce (Secretary). An order of the Secretary requires permits for twine exportation and the approval of such permits by him and by Cordeleros de Mexico, S. de R. L. de I. P. Y. C. V.[1] (Association), which is an association of manufacturers of sisal products formed to protect the business and financial security of its members. The constitution and by-laws of the Association compel the registration of both manufacturers and purchasers of twine.

Midcontinent Twine Company, Inc., (Midcontinent) a Nebraska corporation, was registered with the Association as an authorized purchaser of twine. In January, 1960, Midcontinent, acting by its president, Tritsch, contracted with Bankrupt for the sale by Midcontinent to Bankrupt of the registered trademark "Midcontinent" and of "all the rights of the corporation as importer of twine and twine products from Mexico." During February and March, 1960, Lourdes and Santa Ines shipped to Bankrupt 19,300 bales of twine on which the unpaid balances are $34,500 and $20,150, respectively. The Wilsons and their company were adjudicated bankrupt on April 25, 1960. The Trustee took possession of 12,051 bales of twine. Lourdes and Santa Ines each filed a reclamation petition asserting that they believed that they were doing business with Midcontinent, that Bankrupt was not an authorized purchaser, and that Bankrupt's possession of the twine was without title or right. By agreement the twine was sold with the liens, if established, to follow the proceeds.

The Trustee contends that the district court had no jurisdiction to review the Referee's order denying the reclamation petitions because the petitions for review

1. The English translation of the words indicated by the initials is "Association of Limited Responsibility of Public Interest and Variable Capital."

were filed out of time. The applicable statute is § 39, sub. c of the Bankruptcy Act which, as amended in 1960,[2] provides in its first sentence that a person aggrieved by an order of a referee may file a petition for review within 10 days after the entry of the order complained of "or within such extended time as the court upon petition filed within such ten-day period may for cause shown allow." The third sentence provides that the referee's order shall become final unless the aggrieved person shall petition for review "within such ten-day period, or any extension thereof."

The Referee's order denying the petitions in reclamation was filed on September 12, 1960. On September 22 the court extended the time to October 12, and on October 12 the time was further extended to December 12. The reason assigned for the second request was the inability of the reporter to furnish a transcript of the hearing. The petitions for review were filed October 26, 1960. The timeliness of the review petitions depends on the validity of the second extension.

Section 2, sub. a(10) of the Bankruptcy Act[3] invests the courts of the United States with jurisdiction to:

"Consider records, findings, and orders certified to the judges by referees, and confirm, modify, or reverse such findings and orders, or return such records with instructions for further proceedings."

Section 39, sub. c prior to the 1960 amendment provided that persons aggrieved by referees' orders might file a petition for review within 10 days after the entry of the order "or within such extended time as the court may for cause shown allow."

In Pfister v. Northern Illinois Finance Corp., 317 U.S. 144, 151–153, 63 S.Ct. 133, 87 L.Ed. 146, the Supreme Court considered whether § 39, sub. c as it read before the 1960 amendment was "a limitation on the power of the District Court to act or on the right of a party to seek review." In that case the district court held that it was without jurisdiction because the petition for review was not filed in time. The Supreme Court reversed, saying:

"The power in the bankruptcy court to review orders of the referee is unqualifiedly given in § 2(10). The language quoted from § 39(c) is rather a limitation on the 'person aggrieved' to file such a petition as a matter of right."

The 1960 amendment was intended to eliminate confusion as to the finality of referees' orders and was recommended to Congress by the Judicial Conference of the United States.[4] That amendment did not affect the jurisdiction given to the district courts by § 2, sub. a(10) but did affect the exercise of such jurisdiction. While the amendment limits the absolute right of a party to file a petition to review unless the petition is filed within the 10-day period or an extension granted within that period, it does not limit the discretionary power of a district court to receive and grant such petition when the petition is filed within the 10-day period or any extension thereof.

**2.** 11 U.S.C. § 67, sub. c, Section 39, sub. c of the Bankruptcy Act, as amended in 1960, reads thus: "A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court upon petition filed within such ten-day period may for cause shown allow, file with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. Such petition shall set forth the order complained of and the alleged errors in re-spect thereto. Unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the referee shall become final. Upon application of any party in interest, the execution or enforcement of the order complained of may be suspended by the court upon such terms as will protect the rights of all parties in interest."

**3.** 11 U.S.C. § 11, sub. a (10).

**4.** 2 U.S.Cong. & Adm.News 1960, pp. 3194–3197.

We must construe the 1960 amendment so that it is consistent within itself and with the other provisions of the bankruptcy laws. The cases which have been decided since 1960 and which have been called to our attention are not helpful as all concern situations in which no petition for review was filed, and no extension obtained, within the 10-day period.[5]

General Order 37[6] makes the Federal Rules of Civil Procedure applicable to proceedings under the Bankruptcy Act "in so far as they are not inconsistent with the Act." Rule 6(b), F.R.Civ.P., permits the enlargement of time "if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order." The third sentence of the amendment refers to "any" extension and not to an extension obtained within the period limited by the first sentence. Nothing in the third sentence is inconsistent with Rule 6(b).

■ As we read the amendment it limits the absolute right of an aggrieved person to file a petition for review but does not deny the discretionary power of the district court to receive and determine such petitions when they are presented in compliance with Rule 6(b). So construed § 39, sub. c is consistent within itself, consistent with § 2, sub.

a(10), and consistent with Rule 6(b). In the case at bar the second extension was obtained within the time granted by the first extension and that extension was granted within the 10-day period. The requirements of Rule 6(b) were met and the petitions were timely.

The Referee found as a fact that Lourdes and Santa Ines knew or should have known that they were dealing with Bankrupt rather than Midcontinent and on the basis of that finding concluded that title to the twine had passed to Bankrupt. The district court rejected this finding.

■ The district court must accept the fact findings of the referee unless they are clearly erroneous.[7] On this appeal we are in the same position as is the Supreme Court when it considers a case wherein the court of appeals has set aside a fact finding of the district court. In such a situation the Supreme Court has said that the question is whether the findings of the district court, not of the court of appeals, are clearly erroneous.[8] A majority of the courts of appeals have held that where the district court rejects a referee's findings as clearly erroneous, the court of appeals applies the clearly erroneous test to the decision of the referee.[9] Accordingly, our problem is whether the crucial fact finding of the Referee is clearly erroneous.

5. See In the Matter of Acme Furnace Fitting Company, 7 Cir., 302 F.2d 318; In re A. Edward Harnik, D.C.W.D.Ark., 207 F.Supp. 325; In the Matter of Raymond Earl Lawson, D.C.W.D.Va., 201 F.Supp. 710; In the Matter of Victor P. Danenza, D.C.E.D.N.Y., 200 F.Supp. 694; In the Matter of Sol Silver, D.C.S.D.N.Y., 199 F.Supp. 836; In the Matter of Middletown Packing Company, D.C.Conn., 199 F.Supp. 657; and In the Matter of George Lewis Watkins, D.C.W.D.Va., 197 F.Supp. 500.

6. General Orders in Bankruptcy, 11 U.S. C.A. following § 53.

7. General Order 47, General Orders in Bankruptcy, 11 U.S.C.A. following § 53, provides that the judge shall accept the referee's findings of fact unless clearly erroneous. Nothing is gained by inquiry into the question of whether General Order 47 applies to general references or only to special references. Compare Mazer v. United States, 7 Cir., 298 F.2d 579, 581–582, and Simon v. Agar, 2 Cir., 299 F.2d 853, with Gross v. Fidelity & Deposit Company of Maryland, 8 Cir., 302 F.2d 338, 339, because by the operation of General Order 37, Rules 52(a) and 53(e) (II), F.R.Civ.P., apply. See Engelbrecht v. Bowen, 9 Cir., 300 F.2d 891, 895.

8. McAllister v. United States, 348 U.S. 19, 20–21.

9. In the Matter of Herman Tabibian, 2 Cir., 289 F.2d 793, 795; Phillips v. Baker, 5 Cir., 165 F.2d 578, 582; In re Newman, 6 Cir., 126 F.2d 336, 337; In re Skrentny, 7 Cir., 199 F.2d 488, 492; Gross v. Fidelity & Deposit Company

The evidence consists of the order of the Secretary relating to the exportation of twine, the regulations of the Association, letters and telegrams passing between Lourdes and Santa Ines, on the one hand, and either Bankrupt or Tritsch, president of Midcontinent, on the other, and various bills of lading, invoices, and drafts plus the testimony of an officer of Lourdes and an officer of Santa Ines. An exposition of the evidence in detail will add nothing to this opinion. Considering the exhibits in the manner most favorable to the Trustee they show confusion as to whether the transactions in question were with Midcontinent, an authorized purchaser, or with Bankrupt which was not so authorized. This confusion was created by Bankrupt and Tritsch and could have been clarified by them. The positive testimony of the representatives of the Mexican companies was that they believed that they were dealing with Midcontinent and that they would not and could not have dealt with Bankrupt because of lack of authorization. This testimony was not weakened by cross-examination and is not inconsistent with the exhibits. It is inherently probable because the conduct described complies with Mexican law.

If, as the Trustee contends, Lourdes and Santa Ines knew that the transactions were with another entity than Midcontinent, Bankrupt and Tritsch could have come forward with contradicting testimony. The fact that Tritsch and Bankrupt were each present at the trial before the Referee is not denied. Neither of them testified.

In Nicholas v. Davis, 10 Cir., 204 F.2d 200, 202, the Tenth Circuit held that:

"When controlling, positive, and uncontradicted evidence is introduced, and when it is unimpeached by cross-examination or otherwise, is not inherently improper, and no circumstance reflected on the record casts doubt on its verity, then * * it may not be disregarded, even though adduced from interested witnesses, and no question of credibility or issue of fact is presented for determination by the jury."

The rule so stated applies here. The confusion in the exhibits arising from variations in the corporate name of Midcontinent and from the different capacities in which Tritsch signed communications from Midcontinent does not cast doubt on the positive testimony of the representatives of Lourdes and Santa Ines. The methods in which the orders were placed, the shipments billed, and the sight drafts presented do not, in and of themselves, impeach or contradict the testimony. Further, all buyers had to be registered with the Association. Midcontinent was so registered but Bankrupt was not. The purchase orders had to be approved by the Association and an order to an unregistered buyer would not be approved. The transactions in question were approved by the Association. Such approval would not have been secured if it had been known that the shipments were to an unregistered buyer. Viewing all the evidence we are left with the definite and firm conviction that the Referee was mistaken in finding that Lourdes and Santa Ines knew or should have known that they were doing business with Bankrupt rather than Midcontinent. Accordingly, the finding is clearly erroneous [10] and its rejection by the district court was proper.

The Trustee took the twine possessed by Bankrupt on the date of bankruptcy "with all the rights, remedies, and

---

of Maryland, 8 Cir., 302 F.2d 338, 339–340; Lines v. Falstaff Brewing Co., 9 Cir., 233 F.2d 927, 930, certiorari denied 352 U.S. 893, 77 S.Ct. 129, 1 L.Ed.2d 88; cf. Forbush Co. v. Bartley, 10 Cir., 78 F.2d 805, 806. But see In the Matter of the Arbycraft Co., 3 Cir., 288 F.2d 553, 556; Mountain Trust Bank v. Shiflett, 4 Cir., 255 F.2d 718, 720; Stewart v. Ganey, 5 Cir., 116 F.2d 1010, 1012–1013; and Carr v. Southern Pac. Co., 9 Cir., 128 F.2d 764, 768.

10. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

powers of a creditor then holding a lien thereon."[11] Absent any controlling provision of the Bankruptcy Act, the validity, nature and effect of a lien on the property of a bankrupt are governed by the law of the state where the property is situated.[12] We are concerned here with no questions as to the rights of intervening creditors or of bona fide purchasers. The issue is not whether the contract of sale was valid in Mexico but whether the mistake made by Lourdes and Santa Ines in the identity of the purchaser of the twine entitles them to the rescission of the contract and the restitution of the twine taken over by the Trustee. The laws of Mexico are relevant only to the extent that they bear on the conduct of Lourdes and Santa Ines.

█ Lourdes and Santa Ines sold twine to Bankrupt when they believed they were selling to Midcontinent. A person has the right to contract with whom he will[13] and cannot be held to have contracted with a person other than the one he contemplated.[14] The Trustee urges that there may be no rescission because the mistake was unilateral and the goods were delivered and paid for in part.

█ A mistake justifying rescission need not be mutual.[15] The mistake of one party justifies affirmative relief when the fact as to which the mistake is made goes to the basis of the transaction,[16] and was known to the other party to the transaction.[17] The mistake of Lourdes and Santa Ines was material and went to the heart of the transaction because it directly affected their right and power to sell. Bankrupt knew that the transaction required approval by the Secretary and the Association, that a transaction with an unregistered purchaser would not be approved, and that it was not a registered purchaser. The mistake in identity was known to Bankrupt because it knew its own identity and its conduct was such that it either knew or should have known that Lourdes and Santa Ines thought they were dealing with Midcontinent.[18] A review of the authorities convinces us that in such circumstances a unilateral mistake is ground for rescission.[19] The record discloses no negligence, laches, or estoppel which would militate against the right of Lourdes and Santa Ines to rescind.

Partial payment by Bankrupt does not defeat rescission. The return or offer to return of that which was received in the transaction is not necessary when the thing received is money which can be credited if restitution is granted.[20]

Affirmed.

11. 11 U.S.C. § 110, sub. c.

12. Porter v. Searle, 10 Cir., 228 F.2d 748, 750.

13. Arkansas Valley Smelting Company v. Belden Mining Company, 127 U.S. 379, 387, 8 S.Ct. 1308, 32 L.Ed. 246.

14. School Sisters of Notre Dame v. Kusnitt, 125 Md. 323, 93 A. 928, 934, L.R.A. 1916D, 792; Jones v. Chicago B. & Q. R. Co., 102 Neb. 853, 170 N.W. 170.

15. Corbin on Contracts, Vol. 3, § 608, p. 669.

16. Restatement, Restitution, § 12, comment c, p. 51.

17. Williston on Contracts, Rev.Ed., Vol. 5, § 1573, p. 4399.

18. See Corbin, supra, § 601, p. 611.

19. C. N. Monroe Manufacturing Company v. United States, D.C.E.D.Mich., 143 F. Supp. 449, 451, and cases there cited. See also United States v. Jones, 9 Cir., 176 F.2d 278. Cf. Grymes v. Sanders, 93 U.S. 55, 60, 23 L.Ed. 798.

20. Restatement, Restitution, § 65(f), p. 255, and illustrations to clause (f), pp. 263–264. Cf. Shields v. Meyer, 183 Kan. 111, 325 P.2d 29, 34.