## DETRICH et al. v. DETRICH.

No. 28006. April 5, 1938.

Peyton E. Brown and M. C. Kratz, for plaintiffs in error.

T. J. Sargent and Irving D. Ross, for defendant in error.

RILEY, J. This is an appeal from a judgment of the district court of Kay county, there on appeal from a final decree of distribution entered in the county court of said county in the estate of Alonzo H. Detrich, deceased, wherein defendant in error was the surviving widow of said deceased.

The decree of distribution° distributed all the property belonging to the estate of said deceased to the widow under the proviso in subdivision 2, section 1617, O. S. 1931, which is:

"Provided, that in all cases where the property is acquired by the joint industry of husband and wife during coverture, and there is no issue, the whole estate shall go to the survivor, at whose death, if any of the said property remain, one-half of such property shall go to the heirs of the husband and one-half to the heirs of the wife, according to the right of representation."

The estate, after the payment of all debts and widow's allowance, consisted of personal property (cash, livestock, grain, machinery, notes, etc., of the value of $4,500 or more), 160 acres of land in Kay county, Okla., a small tract of land in Morris county, Kan., and two lots in Hunnewell, Kan. The land in Kay county is the homestead and is the only property in controversy here.

The facts were stipulated and are, in substance: Alonzo H. Detrich made actual settlement on the land at the opening of the Cherokee Strip, September 16, 1893. Another party made formal entry at the land office ahead of his application. A contest ensued which was finally decided in Detrich's favor about August 8, 1896; written entry was allowed September 12, 1896. Detrich was in possession during that time. Final proof was made October 3, 1903. Final certificate was issued October 5, 1903; patent was issued dated February 12, 1904. Decedent occupied the land and claimed same as his homestead continuously from September 16, 1893, until patent was issued. On October 10, 1897, deceased married Grace L. Davey (defendant in error). Thereafter she lived with him continuously on the land until his death in 1936. He died intestate, and there were no children born of the marriage. He left surviving him as his heirs, his widow, Grace L., two sisters, three brothers, a niece and two nephews, children of a deceased brother.

Plaintiffs in error here are Daisy D. Detrich, Alice B. Detrich, sisters, and Edward K. Detrich, a brother. The other brothers, the nephews, and niece do not contest the decree of distribution.

In October, 1893, decedent constructed a dwelling on the land, "a dugout" 12 ft. by 20 ft., and broke out 20 acres which he cultivated in 1894. He cultivated 30 acres in 1895, and 90 acres in 1896, and each year thereafter until final proof was made.

In 1897, and 1898, the land was further improved by the construction of a house 16 ft. by 28 ft., a barn and granary, and at the date of final proof, he had constructed three miles of wire fence and had an orchard of about two acres. All the improvements were then valued to $1,500. Decedent inherited no property. The wife inherited about $1,000 in 1909.

"It is further stipulated and agreed that said decedent and his wife, Grace L. Detrich, lived continuously upon said land in question until the date of his death in 1936.

"It is further stipulated and agreed that from the date of the marriage of said parties the said Mrs. Detrich kept the house, did the sewing, raised and marketed poultry, milked the cows, sold butter and eggs, tended the garden, assisted with the chores and frequently drove teams in the field and assisted in haying and harvesting."

The decree of distribution made by the

county court and affirmed by the district court found and decreed:

"* * * That the said deceased died without issue and that all of his property of every kind and character was acquired by joint effort and industry of the deceased and Grace L. Detrich, his widow, during their coverture, and by reason thereof the entire estate, both real and personal of which the deceased died seized or possessed descends to and becomes the property of and vests in the widow, Grace L. Detrich; and it is further found by the court that as to the first hereinabove described real estate, that the same was the homestead of the deceased and is the homestead of the surviving widow; and the court further finds that as to the real property in Kansas belonging to the deceased and hereinabove described, that under the laws of said state the title thereto descends to and vests in the surviving widow, Grace L. Detrich.

"It is therefore by the court ordered, adjudged and decreed that the said Grace L. Detrich may have full homestead rights in and continue to possess and to occupy the said southeast quarter of section 27, township 29 north, range 2 west, Kay county, Oklahoma, and it is further ordered, adjudged and decreed by the court that said last described farm, together with all other property belonging to said estate of every kind and character of which the deceased died seized and possessed, and wheresoever located, shall be, and the same hereby is transferred, vested, assigned and conveyed unto the said Grace L. Detrich, in fee simple and forever, with full and complete power to transfer, sell, assign and convey the same.

"To have and to hold the same, together with all and singular the hereditaments and appurtenances to the said Grace L. Detrich, her heirs and assigns, forever."

Plaintiffs in error do not contest the right of the widow to use and occupy the land as the homestead during her life, but contend that the court erred in finding and holding that the land in question was property acquired by the joint industry of the husband and wife during coverture, and in decreeing the whole thereof to the widow.

The facts in this case are very similar to the facts in Goff v. Goff, 104 Okla. 257, 231 P. 204. The only substantial difference is that in the Goff Case, in addition to general assistance in the usual domestic duties, the wife inherited some $600, and used the same in improving the land before final proof was made and patent issued. But this is only a difference in degree or extent of assistance in the joint enterprise. It is virtually conceded that if the judg-

ment and decree in the instant case is reversed, the Goff Case, supra, should be overruled.

Plaintiffs in error contend that the weight of authority is that where the marital relation does not exist at the time of the original settlement and entry, and continue until final proof is made, the property should be held to be the separate property of the spouse who finally acquires the patent to the land.

We are cited to a number of cases from states having the community property rule which in effect adhere to such rule as determinative of the question whether property thus acquired becomes community property.

There is great conflict in the authorities from states having the community property system as to whether land acquired under the various acts of Congress under which title to public lands is acquired does or does not become community property. This is pointed out in Teynor et ux. v. Heible et al. (Wash.) 133 P. 1. This case seems to be the final word in that state on the question as applied to a homestead entry initiated by a single man and completed after his marriage. It is there held:

"Where a single man entered land under the homestead laws of the United States and then married and then made final proof and obtained a patent and died intestate without having parted with the title, the property was his separate property."

The rule announced in the Teynor Case is reaffirmed in the case of Card v. Cerini et al. (Wash.) 150 P. 610. It is there held:

"Land acquired from the government by homestead entry is the separate property of the spouse acquiring the patent, unless the marital relation exists at the time of the original settlement and entry, and continues until final proof is made; and hence, where an entryman married after the entry, but before the final proofs, the land was not community property."

It appears well settled in that jurisdiction that where the marital relation exists at the time of original settlement and entry and continues until final proof is made, the property thus acquired becomes community property. The rule was followed in Citizens Nat. Bk. v. Ruly (N. M.) 226 P. 416.

In Teynor v. Heible, supra, the Supreme Court of Washington, in order to bring the decisions of that court more in harmony, fixes the time when property thus acquired may become community property at the date when the settlement and entry are made,

and holds that this relation must then exist and continue until final proof is made. It is pointed out that any other rule might lead to incongruous results, such as possibility that in a state of facts such as shown in Rogers v. Minneapolis Th. Mach. Co., 48 Wash. 19, 92 P. 774, 95 P. 1014, the land might be impressed with the interests of two distinct communities; one in favor of the issue of the first wife and the other in favor of the second wife. It must be admitted that to follow the rule announced in the Teynor Case, hardship in some cases must ensue. For instance, a man might make settlement and entry under the United States homestead laws, and a short time thereafter marry and live with the wife on the land for a period of approximately seven years, and then make final proof. The wife might during all those years expend her energies, aid and assist the husband to the utmost of her ability in maintaining the home on the land, cultivating and improving it, and after all that, could acquire no community interest in the land. It must be borne in mind that in such cases the court was dealing with statutes setting up a system of property rights amounting to a rule of property.

Here we are dealing with a statute of distribution.

In Hicks v. Jeffress, 178 Okla. 109, 61 P.2d 1079, it is said:

"The proviso contained in section 1617, supra, relied upon by plaintiff herein, does not constitute a rule of property in this state, but is purely a rule of descent and distribution."

In Pridemore v. Duncan, 146 Okla. 70, 293 P. 266, it is said:

" 'The doctrine of community property as applied to the marriage relation, in force in some of the states of this country,. exists only by statute'."

In the sentence preceding the above, it is said:

"We do not consider the rule and decisions of the courts of those states applicable or controlling in the instant case, because those states have by statute created what is known as community property."

As in Goff v. Goff, supra, we are concerned only with the question whether the property involved was acquired during coverture and by the joint industry of husband and wife. That this may be the case where the property was acquired as here is recognized even in the state of Washington, where the community property system exists.

In Ahern v. Ahern (Wash.) 71 P. 1023, it is said:

"Certainly it is by the combined efforts of the husband and wife that title to homestead lands is acquired. The homestead law contemplates this, for, in the case of a man with a wife, it becomes necessary, in order to prove a residence to show that the wife or family resided upon the homestead for the period during which residence was acquired."

That case is one not expressly overruled in the Teynor Case, supra.

We are satisfied with the rule announced in Goff v. Goff, supra, and are not inclined to overrule same. But in this case the decree of distribution goes a step beyond the plain provision in subdivision 2, of section 1617, supra, in so far as it decrees the property in question to Grace L. Detrich "in fee simple and forever * * * to have and to hold the same * * * to the said Grace L. Detrich, her heirs and assigns forever."

While it is true that this court has held in Bingham v. Horn, 123 Okla. 193, 252 P. 847, and other cases, that the surviving spouse may by will dispose of property acquired by the joint industry of the husband and wife during coverture, when there is no issue, it does not follow that the property goes to the survivor and his or her heirs by operation of law upon the death of the other spouse. The statute expressly provides that upon the death of the survivor, if any of the property remains, one-half shall go to the heirs of the husband and one-half to the heirs of the wife according to the right of representation. The fullest extent which the law warrants a decree of distribution in such case is to transfer, vest, and convey the property to the surviving spouse with full right and power to transfer, sell, assign, and convey, and to have and to hold the same as property acquired by the joint efforts of husband and wife during coverture.

The decree herein is modified to the extent stated, and as so modified is affirmed.

BAYLESS, V. C. J., and PHELPS, GIBSON, and DAVISON, JJ., concur.