LUNCEFORD et al. v. LUNCEFORD.

No. 35495.    March 10, 1953.

Rehearing Denied April 14, 1953.

Application for Leave to File Second Petition for Rehearing Denied April 28, 1953.

*255 P. 2d 909.*

Harlan S. Trower, Jack J. Ferguson, and Jack I. Gaither, Tulsa, for plaintiffs in error.

Luther P. Lane and Kriete & Kriete, Tulsa, for defendant in error.

CORN, J. This is an appeal from a judgment of the district court of Tulsa county, affirming a decree of distribution of the county court.

After a full and complete hearing, the district court made findings of fact which are set forth in the journal entry of judgment, to wit:

"The defendants then introduced their evidence and rested and the Court after hearing all of the testimony of witnesses, and examining all of the documentary evidence introduced and hearing the argument of counsel and being fully advised in the premises finds that Sabra C. Lunceford was married to Emmett L. Lunceford on the 29th day of January, 1947; that no issue was born of said marriage and that Emmett L. Lunceford departed this life on the 28th day of January, 1948, and left surviving him his widow Sabra C. Lunceford, a sister Lula Wilkerson, a sister Fay A. Lunceford Whitcomb, a brother James Lunceford, and a nephew Lester Lunceford, son and only survivor of a deceased brother; that the said Emmett L. Lunceford left no children; that at the time he married Sabra C. Lunceford plaintiff he had been in ill health for some time and that he had no assets or property of any consequence; that his equipment was old and run down and had encumbrances thereon in excess of the value of such equipment; that the real estate consisting of the homestead was likewise encumbered with liens that were in default and subject to foreclosure and the equity therein was of doubtful value if any existed. That after the marriage of plaintiff to Emmett L. Lunceford she not only maintained the home but assisted in the operation of the business and practically managed it. That shortly thereafter some of the old equipment was exchanged for more modern equipment and some new equipment was purchased and the indebtedness materially reduced; that the liens on the homestead were placed in good standing by payment of delinquent installments; that through the efforts of his widow, Sabra C. Lunceford, his business had been revived and improved; that some assets had been acquired at the time of his death; that his widow used the proceeds of his life insurance which was payable to her in payment of claims against his estate; the court therefore finds generally for the plaintiff Sabra C. Lunceford, and against the defendants; that the property owned by Emmett L. Lunceford, deceased, at the time of his death was acquired by joint industry of Sabra C. Lunceford and Emmett L. Lunceford, husband and wife, during coverture and that the surviving widow Sabra C. Lunceford is entitled to all of

the property of Emmett L. Lunceford, deceased, and all increment if any to said property."

The assets and liabilities of Emmett L. Lunceford at the time he married in 1947, as testified to, are as follows:

"Assets.

One 1937 Ford Truck,
value approx. . . . . $300.00
Less indebtedness . . 300.00 No value
One 1936 Ford Truck
appraised at . . . . $1000.00
at time of death, but
actually worth . . . . . . . . $200.00
One 1941 Dodge ½-ton
pick-up appraised at $500.00
but actually sold for . . . . . . $50.00
One 1941 Ford ½-ton
pick-up, value . . . . . . . . $150.00
Office equipment, dol-
lies, etc. . . . . . . . . . . . . $100.00
Real estate, worth ap-
prox. at the time of
marriage . . . . . . . . . . . $3000.00
                                    ————
Total Assets            $3500.00

"Liabilities.

Amount owed Ameri-
can Exchange Bank . . . . . . . $563.00
Amount owed Opal
Meeker . . . . . . . . . . . $1000.00
Amount due Home
Owner's Loan Corpo-
ration, Approx. . . . . . . . $1700.00
                                    ————
Total Amount Owed      $3263.00
Total Net Worth        $ 237.00

The inventory of the property filed by Sabra C. Lunceford, in county court in February, 1948, gave the appraised value of the property to be $6,874 without any deductions for indebtedness against the property. The property in Tulsa, which was set aside to her as her homestead, was appraised at $4,200, and the property in Spavinaw at $250, which was sold later for $100. We have already shown, which is borne out by the record, that the appraised value of the property, which was made in February, 1948, was far in excess of the actual value.

The plaintiffs in error contend:

" * * * By way of explanation, it should be stated that a sister of the decedent, Lula Wilkerson, assigned her interest in the estate to Sabra Lunceford for a consideration of $1000.00. Therefore, plaintiffs in error are entitled to only an undivided three-eights interest in the estate. These facts do not appear in the District Court record, but they were brought out in the County Court hearing."

In answer to this the defendant says:

"Plaintiffs in error in their conclusion infer that Lula Wilkerson, a sister of deceased, assigned any interest she might have in the estate to Sabra C. Lunceford and received in payment therefor the sum of $1000.00. There is not one scintilla of evidence in the record to justify this statement and inasmuch as it is injected in the brief, we feel the Court should permit us the liberty of replying thereto. No such evidence was before the County Court. We have the transcript of the evidence touching upon this matter and we quote verbatim the questions propounded by Mr. Trower, one of the attorneys for plaintiffs in error, to Mrs. Wilkerson and her answers:

"Q. Mrs. Wilkerson, you made an assignment of an interest in this estate to Mrs. Lunceford, did you? A. Maybe I don't know what you mean. Q. Did you make an assignment of your interest in this estate to Mrs. Sabra Lunceford? A. I had no interest in it. Q. Did you make an assignment? * * * Q. Did you sign a quitclaim deed, also to the real estate involved in this estate? A. I signed it. I had no interest in it. Yes sir, I did if that is what you mean. Q. You signed a quitclaim deed to the real estate, didn't you, to Mrs. Lunceford? A. Would it be a quitclaim deed, maybe so. Q. And you received a consideration for that, didn't you? A. I did not. Q. Didn't you take a promissory note for a thousand dollars, or any other amount? A. I did not. Q. You say you took some cash? A. Yes, sir. Q. Was that one time, or more than one time? A. One time. Q. And that was in connection with the assignment and quitclaim deed to this estate? A. Had nothing to do with that at all."

The plaintiffs, in their brief, also state, "all the evidence shows that none of the property owned by Emmett

L. Lunceford at the date of his death was acquired during his marriage to Sabra C. Lunceford." We find that statement to be substantially correct.

The district court, in effect, held that she could under the second subdivision of 84 O.S. 1951 §213, which provides:

" * * * Provided, that in all cases where the property is acquired by the joint industry of husband and wife during coverture, and there is no issue, the whole estate shall go to the survivor, at whose death, if any of the said property remain, one-half of such property shall go to the heirs of the husband and one-half to the heirs of the wife, according to the right of representation."

The trial court found that while the property was acquired before marriage, it had an indebtedness against it at the time of their marriage equal to or more than the value of the property, that the said wife maintained the home, assisted in the operation of the business and through her management of the business reduced the indebtedness, got the lien on the homestead in good standing by paying the back installments, and that in doing this she had used some of the money that belonged to her individually. In Detrick v. Detrick, 182 Okla. 429, 78 P. 2d 303, we held in the 3rd syllabus:

"Where a single man makes settlement and homestead entry of land under federal laws providing for the disposition of public land, and thereafter marries and his wife lives with him on the land and assists in the usual way with all the work, etc., necessary to the maintenence of residence requisite to make final proof and complete the title, such property may properly be held to be acquired by the joint industry of the husband and wife, so as to subject it to the proviso in subdivision 2 of section 1617, O.S. 1931. The proviso in subdivision 2 of section 1617, O.S. 1931, does not constitute a rule of property in this state, but is purely a rule of descent and distribution."

In Re. Lewis Estate, 200 Okla. 352, 194 P. 2d 174, we held:

"This court will not, on an appeal from the district court in a trial, de novo from the county court in a probate matter, disturb the findings and judgment of the trial court on review unless such findings and judgment are clearly against the weight of the evidence."

See, also, Thompson v. Thompson, 177 Okla. 437, 60 P. 2d 615; Barnes, Adm'r, v. Logston, 184 Okla. 464, 88 P. 2d 361; In re Smith's Estate, 197 Okla. 405, 172 P. 2d 328, and cases cited therein.

From all the facts and circumstances in this case, we cannot say that the judgment of the trial court is clearly against the weight of the evidence.

Affirmed.

HALLEY, C.J., JOHNSON. V.C.J., and WELCH, DAVISON, O'NEAL, and WILLIAMS, JJ., concur.

