[S. F. No. 13365. In Bank.—October 28, 1930.]

WILLIAM McINTOSH et al., Copartners, etc., Respondents, v. W. W. FUNGE, Jr., Appellant.

SMITH LUMBER COMPANY OF SAN FRANCISCO (a Corporation), Respondent, v. W. W. FUNGE, Jr., Appellant.

EUGENIA MASSAGLI et al., Copartners, etc., Respondents, v. W. W. FUNGE, Jr., Appellant.

W. W. Funge, Jr., *in pro. per.,* and Robert L. McWilliams for Appellant.

Sylvester J. McAtee, Hartley F. Peart, Carey & Gorfinkle, Maurice R. Carey and Bacigalupi, Elkus & Salinger for Respondents.

CURTIS, J.—This is an appeal by defendant from a joint judgment rendered in favor of the plaintiffs in three actions, originating in the same controversy, which had been consolidated for trial. These actions grew out of an alleged breach of contract for the construction of a two-story dwelling-house in the residential district of San Francisco, known as St. Francis Wood. Due to disagreement which arose between the defendant owner, W. W. Funge, Jr., and the principal contractors, McIntosh Bros., shortly after the commencement of building operations, the building was never completed. Action 173914 was begun by McIntosh Bros., the principal contractors, for the reasonable value of the services rendered and materials supplied to the defendant owner in the construction of said building and for the profit which would have been realized had the contract been completed. Action 171926 was commenced by Smith Lumber Company of San Francisco against McIntosh Bros., as defendants, for the agreed price of the lumber furnished by said company and used by McIntosh Bros. in the construction of said building, and against the owner, as co-defendant, to foreclose a materialman's lien against the property. Action 174168 was instituted by G. Massagli & Co. against McIntosh Bros., as defendants, for the agreed value of the services rendered and the materials furnished in the construction of the concrete work upon said building, and against the owner, as co-defendant, to foreclose a mechanic's and materialman's lien against said property. A cross-complaint was filed by the defendant owner, W. W. Funge, Jr., against McIntosh Bros., in action 173914, for damages alleged to have resulted to said defendant by reason of the failure of McIntosh Bros. to furnish necessary labor and materials to complete in a workmanlike manner said dwelling-house. Upon the consolidated trial of the three actions

the court found in favor of the plaintiffs in the above-entitled actions that McIntosh Bros. were entitled to a judgment for $877 against the defendant W. W. Funge, Jr.; that Smith Lumber Company were entitled to a personal judgment of $731.20 against McIntosh Bros. and to have their lien in the sum of $674 foreclosed against the property, and that G. Massagli & Co. were entitled to a personal judgment of $476.80 against McIntosh Bros. and to have their lien in that sum foreclosed against the said property. From said judgment in favor of McIntosh Bros. and from those portions of the judgment which decree that the sums due Smith Lumber Company and G. Massagli & Co. shall be a lien against said property the defendant owner appeals.

The circumstances which gave rise to this controversy, briefly stated, are as follows:

On February 11, 1926, appellant W. W. Funge, Jr., as owner, entered into a contract with William McIntosh and David McIntosh, doing business under the firm name and style of McIntosh Bros., for the construction of a building on appellant's lot in the city and county of San Francisco. The plans, drawings and specifications were personally prepared by the owner who was not, however, a licensed architect. The owner also acted as his own superintendent of construction. On February 24, 1926, McIntosh Bros. commenced work upon the construction of the building. Two subcontracts were entered into by McIntosh Bros., one contract with Smith Lumber Company for lumber to be furnished for the construction of said building, and the other contract with G. Massagli & Co. for the labor and materials used for all of the concrete work specified in the construction of said building. Differences arose between the owner and the principal contractors with reference to the construction of the building, which the owner claimed was not being constructed according to the plans and specifications, and on March 16, 1926, the owner gave notice to the contractors to discontinue work on the house. On March 29, 1926, he wrote to the General Contractors Association of San Francisco, an organization of building contractors of San Francisco, complaining of faulty work and faulty materials being used in the construction of the building. The board of arbitration of said association, consisting of three members, made a personal inspection of the construction of the

structure and of the workmanship and materials used and rendered its report in writing on April 1, 1926. The owner refused to accept this report and on April 12, 1926, filed his dissent with the association. The association thereupon made further inspection and investigation and on April 22, 1926, made a supplemental report and finding. In this supplemental report it was stipulated that a competent superintendent of construction should be employed by the owner. The owner refused to accede to this requirement, repudiated the report of the General Contractors Association and refused to employ a superintendent of construction. The matter having come to a deadlock, McIntosh Bros., in accordance with the provisions of paragraph ten of the contract, demanded that the matter be submitted to arbitration. In accordance with the provisions of the contract each of the parties selected one arbitrator and the report and findings of these arbitrators was made on August 13, 1926. On August 19, 1926, McIntosh Bros. notified the owner in writing that they accepted said report and offered to make any changes in the construction required by the report of the arbitrators. The contractors believed that it was possible for them to conform to the award by replacing certain pieces of lumber and strengthening others, and on August 30, 1926, they resumed work. The owner, on the other hand, insisted that in order to conform to the report of the arbitrators it would be necessary for the contractors to take down the frame to the first floor and entirely rebuild it. Upon the refusal of the contractors to tear down the frame, the owner refused to permit them to continue and on August 31, 1926, gave them formal notice to stop work. Thereafter on October 11, 1926, the plaintiff contractors instituted the first of these actions. The consolidated cases went to trial on November 3, 1927. However, the findings were not signed and judgment formally entered until July 30, 1928. During this interim, from the time the plaintiff contractors were notified to stop work on August 31, 1926, until April 14, 1928, the frame of the building stood unfinished, an eyesore to the district and a menace to the children of the neighborhood. On the latter date, the owner, pursuant to a resolution of the board of public works, had said building torn down and the concrete foundation broken up and removed. At the date, therefore, of the formal ren-

dering of the judgment the building had been completely demolished and only the excavation of the basement remained.

The complaint of the plaintiff contractors alleged in substance the making of the contract; that plaintiffs commenced to furnish the necessary labor and materials and to perform the work in accordance with the plans and specifications of said contract; that a dispute arose respecting the true construction of said specifications and the sufficiency of the performance of said work; that two arbitrators were selected to settle said dispute; that the plaintiffs accepted the decision of said arbitrators and so notified the defendant owner in writing; that plaintiffs thereafter commenced to again perform said contract but were notified by the defendant in writing that said contract was terminated.

The answer of the defendant owner denied that the plaintiffs furnished the necessary labor and materials in fulfillment of the contract; denied that plaintiffs accepted or were bound by the award of the arbitrators, and alleged that plaintiffs violated said award, disregarded its terms and provisions and failed and refused to act in accordance with the provisions of said report. The answer further sets out in detail the various particulars in which the plaintiff contractors failed to comply strictly with the plans and specifications.

At the trial of the consolidated cases the criticisms and complaints of the owner were taken up individually and in detail. The evidence in the record shows that many of the criticisms of the owner were not fair in that the defects were either actually caused by the owner himself, or were due to deficiencies in the plans and specifications prepared by him. In some instances complaint was made by the owner that the contractor failed to perform certain work no mention of which was contained in the plans and specifications. In still other instances, the owner complained of the manner in which certain work had been performed although he had been present at the time of the performance and had made no protest at the time and had apparently acquiesced in the performance. Moreover, it appears that several of the apparently justifiable complaints of the owner were due to the fact that only the skeleton frame had been put up and the contractors had not had an opportu-

nity to complete the work and thus supply the deficiencies complained of when they were notified by the owner to stop work. There is no testimony in the record which directly or by inference would indicate that the contractors wilfully and deliberately used poor workmanship and defective materials in the building. On the contrary, there is evidence which indicates that an honest effort was made to construct the building in a satisfactory manner. This is evidenced by the fact that, according to the testimony of several witnesses, a better grade of flooring was furnished by the contractors than was called for by the specifications and further by the expressed willingness of the contractors to comply with the terms of the arbitration award although this award required additional work and material not called for by the specifications.

We deem it unnecessary to encumber the reports with any further statement of the details of the controversy. Findings were made with reference to each of the complaints and criticisms and were to the effect that such complaints and criticisms were unwarranted and unjustified. These findings were supported by evidence in the record. True, in many instances, the supporting evidence was the testimony of the plaintiffs to the actions. The lower court, however, was entitled to accept this testimony as true, and upon appeal this court will likewise accept it as true. There is evidence in the record supporting the criticisms and complaints of the defendant owner, but this evidence at most only created a conflict in the evidence which was resolved by the trial court in favor of the plaintiff contractors. This phase of the case, therefore, resolves itself into a mere question of a conflict in the evidence which must be settled by a reiteration of the well-established rule that where there is conflicting evidence the findings of the trial court will not be disturbed on appeal.

Appellant contends that any testimony adduced at the trial with reference to his specific complaints and criticisms is beside the point for the reason that the parties to the contract were bound by the contract to abide by the terms of the arbitrators' award. He insists that the arbitrators' award is conclusive proof that his complaints were well founded and that he was justified in peremptorily notifying the contractors to stop work. Conceding, for the sake

of argument, that appellant's contention that the arbitrators' award is conclusive proof that certain of his complaints and criticisms were well founded, we are confronted by the finding of the trial court to the effect that at the time the plaintiff contractors were notified by the owner to stop work they were correcting the defects set out in the award. This finding of the trial court is supported by evidence in the record. Moreover, there is substantial evidence in the record that it was possible to correct such defects by replacement of defective materials and workmanship without the tearing down of the entire framework of the building. This evidence is embodied in the testimony of Mr. Thurston, one of the arbitrators, and Mr. Monk, chairman of the board of arbitration of the General Contractors Association of San Francisco. The appellant insisted that the frame should be torn down and rebuilt. The question of whether the contractors were carrying out the terms of the award was a question to be determined not by any of the parties to the controversy but by the arbitrators. Inasmuch as the appellant owner gave peremptory notice to the contractors to stop work, thereby depriving them of the opportunity of attempting to rectify the defects by replacing the defective material, the owner eliminated the possibility of arbitration from the controversy and forced the contractors to seek the forum of the courts for a decision of the dispute as to whether they were actually carrying out the terms of the arbitrators' award. In that forum the decision was in favor of the contractors.

It is apparent from the foregoing discussion that if the original controversy between the owner and contractors be inquired into, the findings of the trial court, supported by evidence, are in favor of the contractors, and if the award of the arbitrators be conceded to be binding upon the parties, the findings of the trial court relative thereto, supported by evidence, are in favor of the contractors, and that in either event the judgment on appeal must be affirmed.

Appellant advances the argument that the fact that the building subsequent to the trial was torn down by order of the board of public works is conclusive proof that the work performed by the contractors was of no value to him and that as he received no benefit therefrom the contractors

are not entitled to recover judgment. This, of course, does not follow. This argument is valid only if the resolution of the board of public works was due to derelictions of the contractors or defects in the work performed by them. If the order to remove the building was not due to the fault of the contractors, then the fact that the building was subsequently torn down, whether voluntarily by the owner or involuntarily pursuant to an order of the board of public works, has no bearing upon the question of whether or not the contractors are entitled to recover against the owner. It is to be noted that the direction. of the board of public works was in the alternative, "to comply with building laws and to proceed with said construction of building in accordance with the plans filed with the Board of Public Works . . . or cause the same to be torn down". The principal obstacle to the carrying out of the alternative order of the board of public works was the fact that the foundation of the house had not been set far enough back on the lot to comply with the building restrictions of the district. It was the finding of the trial court, supported by evidence in the record, that the mislocation of the foundation was due to an error on the part of the owner in measuring the distance from the curb line to the · front line of the house. There is testimony in the record of both Mr. McIntosh and of a workman that while Mr. McIntosh held the end of the tape at the curb line, the owner held the other end of the tape and designated the front line of the house. The other obstacle to the finishing of the house was the fact that the walls of the foundation did not extend twelve inches above the ground. There is evidence in the record that the ordinance which it is alleged specified such requirement did not apply to the district in which the house was situated. However that may be, the lower court expressly found that inasmuch as the plans and drawings furnished by the owner specified that the height of the concrete foundation should be twenty inches and provided that the concrete foundation should extend not less than twelve inches into the ground, a strict compliance with the plans and specifications made it impossible to extend the foundation twelve inches in the ground and at the same time twelve inches above the ground. It will thus be seen that the owner's inability to carry out the alternative order of the board of public works

was not due to any fault of the contractors, but was due to his own errors.

Appellant also insists that by the complete demolition of the building on April 14, 1928, the liens of the Smith Lumber Company and G. Massagli & Co. were lost and the decree of foreclosure which was formally rendered on July 30, 1928, was improperly rendered. The fact of the demolition of the building was presented to the lower court on the motion for a new trial which was denied. There is a conflict of opinion in the decisions of the various states as to whether a mechanic's lien attaches to land where the improvement giving rise to the lien has been destroyed or removed. California has adopted the so-called Pennsylvania rule which holds that the destruction of the building, without fault of the owner, before a notice of lien is filed, does away with the right to a lien, no lien attaching to the vacant site. (*Humboldt Lumber Mill Co.* v. *Crisp,* 146 Cal. 686 [106 Am. St. Rep. 75, 2 Ann. Cas. 811, 81 Pac. 30]; *Pilstrand* v. *Greenamyre,* 34 Cal. App. 799 [168 Pac. 1161]; *Kern* v. *San Francisco Co.,* 19 Cal. App. 157 [124 Pac. 862]; *Watson* v. *Alta Investment Co.,* 12 Cal. App. 560 [108 Pac. 48].) In the instant case, however, another important factor, determinative of the question in our opinion, enters into consideration. In the cases above cited the buildings were accidentally destroyed by fire without any fault on the part of either the owner or the contractor. And in *Humboldt Lumber Mill Co.* v. *Crisp, supra,* and *Watson* v. *Alta Investment Co., supra,* it was specifically stated as a premise to the conclusion reached that the building had been destroyed without any fault of the owner. The Pennsylvania cases, which are cited with approval by the California authorities, likewise involve situations in which the buildings were destroyed by fire, tornado or flood. As the building here was torn down pursuant to a resolution of the board of public works perhaps it cannot be correctly said that it was voluntarily destroyed by the act of the owner. However, as before noted, the resolution of the board of public works was in the alternative and the inability of the owner to comply with the alternative order and complete the building was due to his own error in locating the front line of the building and the mistakes in his own plans and specifications. In the final analysis, therefore, the destruction of the building was due to the fault of the owner. In

*Johnson* v. *Smith*, 97 Cal. App. 752 [276 Pac. 146], it was held that the fact that hardwood flooring sold by plaintiff to a contractor was torn out by order of the architect employed by the defendant owners because of the defective manner in which the flooring was laid did not defeat plaintiff's right to a mechanic's lien. The court said, ''The fact that by the act of the owner of the building the material furnished may have been rendered useless should not defeat the rights of an innocent materialman.'' The reasoning therein enunciated is of compelling force and is applicable to the present case. The liens, therefore, were in existence at the date of the judgment of foreclosure herein, and that judgment was proper.

There is no merit in the contention that the judgment in favor of the Smith Lumber Company for $674.70 is too large by reason of the fact that some of the material delivered on the job was not actually used in the construction of the building. The record clearly shows that the lower court was cognizant of this fact and that a proper reduction was made of the value of the lumber not incorporated in the building from the total price of the lumber delivered.

Although it is true that under the contract G. Massagli & Co. was obligated to construct the foundation, basement floors and walks, garage floor and cement steps in addition to rat-proofing the building, and that the only work performed by the company was the putting in of the foundation and the rat-proofing, nevertheless the failure of the company to complete the contract was caused by the action of the owner in notifying the principal contractors to stop work. Under such circumstances the company is entitled to recover for the work actually performed. It should be noted that the testimony of Albert Massagli as to the value of the work was limited to the value of the work actually performed.

It should also perhaps be noted that the contention of appellant that the lien of G. Massagli & Co. had been filed too late was subsequently abandoned.

Judgment is affirmed.

Richards, J., Preston, J., Waste, C. J., Seawell, J., and Langdon, J., concurred.

Rehearing denied.