In re SMITH'S ESTATE.

No. 32081. May 21, 1946.

Rehearing Denied Sept. 10, 1946.

*172 P. 2d 328.*

Gilliland, Ogden, Withington & Shirk, of Oklahoma City, for plaintiffs in error.

Bruce & Rowan, of Oklahoma City, for defendants in error.

DAVISON, J. This appeal involves a contest of the purported will of Alfred or Alferd Smith, aged negro, who died a resident of Oklahoma City, Okla., on January 1, 1944, owning a home in said city and other property in Oklahoma county, including some lots in a town or settlement known as Smithville.

By the terms of said will, Smith bequeathed small sums of money to various persons, whose relationship to him is not shown therein. Two of these were bequests of $5 each to one George Turner of Oklahoma City and one Pearl Turner, formerly of Arizona. All of the rest of the testator's property was, under said will, to go to one Juanita E. Guy, niece of testator's deceased wife.

The present litigation began when F. C. Scott, who was nominated executor without bond in the will, filed his petition in the county court for the probate of said will. Thereafter, a contest of the will was filed in the names of Pearl Smith Ward and George Smith, who apparently are the same persons referred to in the bequests above mentioned as "George Turner" and "Pearl Turner." They claim to have been recognized by the testator as his children, born out of wedlock with one Lizzie Stone, formerly Turner. Their contest was based on charges that the will was not executed as required by law and that the testator lacked testamentary capacity because of old age and illness. Juanita Guy joined F. C. Scott in denying that the instrument propounded was insufficient as a valid will; that the testator lacked testamentary capacity and that the contestants were lawful heirs and entitled to any more of the decedent's estate than the small bequests contained in the will.

After hearing the evidence introduced on behalf of both the proponents and the contestants on the issues thus joined, the county court admitted the will to probate and issued letters testamentary to F. C. Scott as executor of the estate. The contestants then appealed the matter to the district court and upon a trial de novo that court also upheld the will, specifically finding that it was executed in all particulars as required by law, and that at the time he executed it the testator was of sound and disposing mind and not in any respect incompetent to make it and was not acting under duress, menace, fraud, undue influence or misrepresentation. From said judgment the contestants have perfected this appeal. In the interest of clarity our reference to the parties as proponents and contestants will hereinafter be continued.

The question presented herein is whether or not the trial court's finding and judgment of Alfred Smith's testamentary capacity when the will was executed on December 27, 1943, is contrary to the clear weight of the evidence.

In urging the negative of this issue the contestants emphasize the fact that the testator was at least 92 years of age, had been in failing health for some time prior to his death, and that the will was executed only four days before his death at a time when he was suffering from three or four ailments, including senility. They contend that the evidence, when considered as a whole, both direct and circumstantial, shows that the testator could not have been in his right mind at the time he executed the will.

One of the circumstances pointed to is the fact that the will was dated several days prior to the date on which it was actually executed. One F. C. Scott, who drew the will for the testator, testified to a very plausible explanation

of this variance in dates, and we find nothing in the facts shown about the matter in any way indicative of a lack of testamentary capacity on the part of the decedent.

Another circumstance pointed to is the fact that by the terms of Smith's will, the bulk of his estate was given to Juanita Guy, who is not a blood relative, while the contestants, a son and daughter, were practically disinherited. Counsel seem to be of the opinion that this in itself was such an unnatural act on the part of a father as to be quite revealing on the question of the testator's mental capacity at the time.

Whether the contestants are legally recognized or legitimated children of deceased is not an issue in this appeal. The trial court apparently found that they were and no cross-appeal has been taken to challenge that part of the judgment. Whether or not the decided preference the testator showed Mrs. Guy over the contestants in the testamentary disposition of his estate is a matter sometimes taken into consideration with other facts, but in itself is not of controlling importance. See Sporn's Estate v. Herndon, 190 Okla. 149, 121 P. 2d 602, and Minturn v. Conception Abbey, 227 Mo. App. 1179, 61 S.W. 2d 352. However, under the circumstances of this case the preference referred to does not seem so unnatural as it might upon first thought appear. There is nothing in the record to indicate that during his life the testator ever maintained a close social relationship with either of the contestants. As far as the record discloses, neither was near him at the time of his death or had ever lived with or visited him frequently. Pearl Ward testified she had been living in Arizona since 1927. Apparently she had had no contact with the testator for a considerable time before his death and did not learn of it until three days afterward. On the other hand, the evidence shows that Juanita Guy had been reared in Smith's home as his adopted daughter; that the testator had promised his wife before her death to take care of Juanita; that when he became ill she was working on Staten Island, N.Y.; that he had a friend write her to come home and he paid her fare; that she arrived the first week in October, 1943, and lived in his home, keeping house and acting as his nurse when he needed one, until his death. During the trial contestants' counsel made an offer to prove that the deceased had provided financial support for the contestants and they had lived in his home "for a good many years" but the record fails to reveal that any proof was submitted pursuant to said offer, though immediately after the offer the court expressed a willingness to consider such evidence. In view of the record it would seem quite likely that for a long time before his last illness and death, the testator thought much more of Juanita than of the contestants and it would appear quite natural that he would want to leave her a larger share of his estate than other persons named in the will with no such deserving claim on his affection and generosity.

Counsel makes much of the fact that the testator was reclining in bed at the time he executed the will and implies that it was what is sometimes referred to as a "deathbed will." The testimony of proponents' witnesses, however, indicates that the testator's infirmity or incapacity was not as great as such argument infers. His physician, Dr. J. A. Cox, testified that when he called upon him, December 24th, three days before the will was executed and several days after it had been drawn pursuant to his instructions, Smith was sitting at the table eating dinner and had his clothes on. That prior to that time he had not been in bed, but that he had a cold and after diagnosing his case that day as influenza, he directed that he go to bed, saying that he was afraid he might develop pneumonia. According to the attesting witnesses, when they went to Smith's home to witness the will on the 27th, he was sitting up

in or on the bed and did not have to be helped up or assisted in any way to sign the will.

Both Reverend William J. Fizer and Emmett Nelson, the attesting witnesses, had known the testator for many years. They both testified that at the time testator signed the will he was in good mental condition and that they did not see any signs of any mental incompetency; that testator appeared to be a little sick but that there was nothing wrong with him mentally. F. C. Scott, who prepared the will, also testified that testator was mentally competent. Dr. Cox, testator's physician, testified in substance that he had attended testator on December 24th and again on December 28th, and that none of testator's ailments had affected his mentality and that on each of said dates he was rational and sound mentally.

The contestants introduced evidence to impeach the testimony of Dr. Cox. Two witnesses testified that Dr. Cox had stated to them that the testator did not have the mental capacity to make and execute the will in question. This testimony was denied by Dr. Cox.

It is neither proper nor necessary for us to express an opinion as to Dr. Cox's veracity or the weight or credibility of his testimony. Such determination was for the trial judge, who, if he saw fit, was entitled to accept it as true. In this connection, see McIntosh v. Funge, 210 Cal. 592, 292 P. 960, 74 A.L.R. 420; Hosman v. Southern Pac. Co., 28 Cal. App. 2d 621, 83 P. 2d 88, 89; McAfee v. Harden, 180 Okla. 546, 71 P. 2d 463; Lena v. Clinkenbeard, 172 Okla. 6, 44 P. 2d 2, and annotation 120 A.L.R. 1443, 1445. We have noted that, on the sole question at issue, he was not unequivocally contradicted and we further note that he was corroborated by lay witnesses. In this connection, see Jones et al. v. Denton et al., 192 Okla. 234, 135 P. 2d 53; Davis v. Dixon, 149 Okla. 274, 300 P. 378; Payton v. Shipley, 80 Okla. 145, 195 P. 125.

The contestants had five lay witnesses testify concerning Smith's mental and physical condition. Without going into the details of their testimony, it is sufficient to note that in general, it was to the effect that in the later years of Smith's life he became weaker and rather feeble; that at times his mind would wander and his memory lapse. One of the witnesses who had stayed in Smith's home during a part of his last year (before Juanita arrived) testified that on Christmas day, Smith was unable to leave his bed and go to the dinner table without assistance; that he was "out of his head" and could not eat for trembling. This witness also testified that when he was there again on December 29th, Smith was in practically the same condition and did not recognize him or his wife.

As will be seen, the testimony of the lay witnesses for the contestants and proponents was generally in conflict, though none of those for the contestants were present when the will was executed. But evidence that Smith was in an ailing and feeble physical condition and that his mental faculties were somewhat impaired thereby is not proof in itself of testamentary incapacity and cannot be considered conclusive in the face of evidence that he fully understood the significance of his acts. See Amos et al. v. Fish et al., 193 Okla. 406, 144 P. 2d 967. Both the county and district courts specifically found that the testator was not acting under duress, menace, fraud or undue influence, and the contestants have not attacked this finding, limiting their appeal to the sole question of testamentary capacity. Upon its being established that the will was duly executed, they had the burden of proving testamentary incapacity. Amos et al. v. Fish et al., supra. Both of the lower courts have decided that they failed to discharge this burden. Before such determination may be disturbed by this court, we must find that it is clearly against the weight of the evidence. Barnes v. Logston, 184 Okla. 464, 88

P. 2d 361. A careful weighing of the evidence in this case does not support such a conclusion. The judgment of the trial court is therefore affirmed.

GIBSON, C.J., HURST, V.C.J., and RILEY, OSBORN, BAYLESS, and ARNOLD, JJ., concur.