[Civ. No. 751. Fifth Dist. July 14, 1967.]

MARSHALL WELCH McDONALD, Plaintiff and Respondent, v. JAMES H. FILICE et al., Defendants and Appellants.

John Corry Fell for Defendants and Appellants.

Edwards, Friborg & Duda and Frederick R. Duda for Plaintiff and Respondent.

GARGANO, J.—In the fall of 1961 respondent, a licensed architect, contacted appellants who were joint owners of two adjacent parcels of real property located near the shores of Lake Tahoe, California, and secured their permission to submit a design proposal for the construction of a motel on their land. A month or two later respondent prepared an architectural rendering of a four-story motel and in due time the preliminary drawings or sketches were submitted to the Board of Supervisors of El Dorado County for zoning approval. The board, however, objected to the construction of a four-story motel, but agreed to a zoning change to permit the erection of a two-story development. Accordingly, on or about January 16, 1962, the parties entered into a written contract for the development of specifications and architectural drawings for a 100-unit motel to be built by increments as financing became available. The first stage was to consist of 34 units, together with a general lounge room, parking lot and swimming pool. Under the contract, as compensation for his services, respondent was to receive 5 percent of the construction costs of the first stage, which he estimated at $347,000. The contract also provided that he was to receive 30 percent of this fee when the preliminary drawings and outline specifications were completed. At the time the contract was signed respondent had been paid a fee of $1,000 for his preliminary sketches and for the services which he performed in procuring the zoning approval. Moreover, since he also found it necessary to have working capital to begin the project, respondent borrowed $5,205 (a sum approximating his preliminary fee) from the Central Valley National Bank and appellants endorsed his promissory note as sureties. Ultimately the bank sued on the note and appellants paid the full amount thereof. In the meantime respondent, after numerous consultations with appellants, completed the preliminary drawings and outline specifications for the proposed project. Thereafter, he also prepared working drawings. These drawings included struc-

tural and electrical engineering details prepared by structural and electrical engineers at a total out-of-pocket expense to respondent amounting to $3,340. When the working drawings were approximately 90 percent completed "upset price" bids (maximum bids) were secured from two separate contractors. However, after these bids were received appellants requested respondent to take no further action on the program because they wished to "look into other ways of executing the project." Respondent consented, but requested payment for the services which he had already performed. In this connection, respondent testified that he told appellant James Filice that an additional payment of approximately $9,000 would be required. On the other hand, Mr. Filice testified that respondent stated that an additional payment of approximately $3,000 would suffice. In any event, it was agreed that respondent would be paid for the reasonable value of his services upon the submission of a statement. Thereafter, a dispute resulted as to what constituted reasonable value, and when appellants failed to pay the sum specified by respondent in the statement which he submitted, respondent recorded a mechanic's lien for the alleged reasonable value of his services. He subsequently filed this action in the Superior Court of El Dorado County to forelcose the lien and to recover a personal judgment against the appellants. The cause was tried by the court sitting without a jury, and after judgment was entered in favor of the respondent, the appellants appealed.

Since it is manifest that no improvement of any kind was constructed or even commenced on appellants' land, the first question which we must decide is whether respondent nevertheless acquired a lien against the land for the reasonable value of his services under the mechanic's lien laws of this state as these laws are set forth in title 4, chapter 1, commencing with section 1180 of the Code of Civil Procedure. In other words, section 1181 of the Code of Civil Procedure expressly includes licensed architects in the list of persons who may acquire a mechanic's lien, and thus it is clear that respondent would have been entitled to a lien if his work had resulted in the construction of a motel as originally contemplated by the parties. However, since the work had not progressed beyond the preparation of working drawings we must decide if it was nevertheless sufficient to create a mechanic's lien under the facts of this case.

Respondent cites *Nolte* v. *Smith,* 189 Cal.App.2d 140 [11 Cal.Rptr. 261, 87 A.L.R.2d 996], and argues that *Nolte* clearly

supports the trial court's decision in his favor on the issue. In that case the plaintiff, a licensed surveyor, was employed by the defendants to perform the engineering services necessary to subdivide defendant's property into residential lots. The services consisted of surveying, planning and mapping the property, preparing a subdivison map for recording, and constructing and erecting permanent monuments. The plaintiff satisfactorily completed his work in accordance with the contract of employment, but the subdivision map was never approved by the town council because the required bond was not posted by the defendant. There, as here, it was contended that no lien attached against defendant's property under Code of Civil Procedure sections 1181 and 1182 because no improvement of a permanent character had been constructed or even commenced on the property, and that hence the land had not received any benefit from the plaintiff's work. The court, in upholding the plaintiff's lien, held that the setting of permanent monuments on the ground for land subdivision (following extensive engineering services) was similar to the commencement of a ''work of improvement'' or ''improvement,'' and was an integral and essential part of the ''scheme of improvement,'' as those terms are used in Code of Civil Procedure section 1182. Moreover, relying on *McIntosh* v. *Funge,* 210 Cal. 592 [292 P. 960, 74 A.L.R. 420], the court also stated that benefit to the owner is not a prerequisite to a lien where the improvement is not completed or is destroyed as a result of the owner's fault (*Notte* v. *Smith, supra,* at p. 148).

Appellants, arguing the contrary position, strongly rely on *Design Associates, Inc.* v. *Welch,* 224 Cal.App.2d 165 [36 Cal.Rptr. 341], and *Fiske* v. *School Dist. of City of Lincoln,* 58 Neb. 163 [78 N.W. 392]. In *Design* the trial court had found from the evidence that the only authorized work performed by the plaintiff (a licensed architect) consisted of preliminary renditions to be used for a prospectus for the sale of the shares of a proposed corporation. The appellate court, in affirming the trial court's determination that lienable work had not been performed, stated at page 174: ''Since, in California, architects who perform services for 'the construction, alteration, addition to, or repair . . . of, any building, structure, or other work of improvement shall have a lien upon the property upon which they have bestowed labor,' (Code Civ. Proc., § 1181) such an express legislative mandate must not be given a construction so narrow as to defeat its purpose.

Nevertheless, its application cannot be strained to encompass 'pre-preliminary' work intended principally as a prospectus for a public stock-selling campaign; . . .'' And, in *Design* at page 174, the court distinguished the *Nolte* case as follows: ''Three facts present there, not present here, distinguish that case from this: (1) the plans there prepared were not preliminary, but approved and final; (2) permanent monuments had been staked out on the ground; and (3) the failure of the project was due to the fault of the person whose interest in the land was sought to be charged. There is no showing here that the sale of shares failed due to the fault of Welch.''

The *Fiske* case which was cited with approval in *Design* did not involve a mechanic's lien. However, the Supreme Court of Nebraska, in discussing the question of when plans of an architect are part of the ''work of improvement,'' stated at page 393 [78 N.W.]: ''The work of an architect may or may not, according to circumstances, fall within the head of building operations. . . . an architect who prepares plans according to which a building is actually constructed may be said to furnish work in the construction of such building, especially when he superintends the construction. But the preparation of plans is often necessary as a preliminary, merely to assist an owner in determining whether he shall build, and, if so, how. While the project remains in this stage, the work cannot be said to be of a structural character. . . . Perhaps, if the building be actually constructed, the drawing of plans then enters into the construction; but this we do not decide. What we hold is that the preparation of plans and specifications, merely in anticipation of erecting a building,—an anticipation which may or may not be realized,—is not essentially a building operation. . . . The distinction has been sharply drawn in Pennsylvania, where it was held that an architect who superintends construction may have a mechanic's lien for his work, but that one who merely prepares plans to enable the builder to determine the kind of a building he will erect does no work 'for or about the construction of the building,' and has therefore no lien. *Bank* v. *Gries*, 35 Pa.St. 423; *Price* v. *Kirk*, 90 Pa.St. 423; *Price* v. *Kirk*, 90 Pa.St. 47. So, in Texas, the architect's fees cannot be considered as a part of the estimate of construction. *Smith* v. *Dickey*, 74 Tex. 61 [11 S.W. 1049].''

We do not agree with appellants' contention that the facts of this case are entirely analogous to the facts of *Design Asso-*

*ciates, Inc.* v. *Welch, supra.* There the services of the architect were preliminary and were intended primarily for the preparation of a prospectus to be used for a public stock-selling campaign. ▉ In the instant case the specifications and working drawings for the construction of a motel on appellants' land were substantially completed, lacking only a few minor structural details. Furthermore, the facts of the instant case relating to the nature of the work performed are also clearly distinguishable from the facts of *Nolte* v. *Smith, supra.* In *Nolte* plaintiff had set permanent monuments on the defendant's land, and according to the court this constituted the *commencement* of the work of improvement. Also, the services performed by plaintiff in *Nolte* substantially benefited the land itself. This is so for not only was vacant land surveyed, mapped and staked, which in itself enhanced its value, but it also had been adapted to subdivision purposes (a higher land use) even though the final map had not been recorded. In the instant case there was absolutely no commencement of the project on appellants' land in any sense of the word, nor was its value increased to any appreciable extent as a result of respondent's work.

We do not find it necessary, however, to determine whether the liberal doctrine so clearly enunciated in *Nolte* will be further liberalized by extending the protection offered by the mechanic's lien laws to a case where *no work of any kind is commenced* on the land itself, and where its value has obviously not been enhanced to any appreciable extent. This is so because in *Nolte* the trial court had expressly found that the plaintiff's failure to complete the project was the fault of the owner, and in our view this was also a critical factor in the appellate court's decision. In the instant case the trial court expressly found that the parties had rescinded their written contract of employment, and had substituted in its place an agreement that respondent would be compensated according to the reasonable value of his services. Implicit in this finding, which is not contested by either party, is a determination that the project contemplated by the written employment agreement was abandoned by mutual consent. Under these circumstances we conclude that no lien attached to appellants' land, and that the court's judgment in this respect is inconsistent with its finding of fact and must be reversed.

We have noted with interest the case of *Lamoreaux* v. *Andersch*, 128 Minn. 261 [150 N.W. 908], cited and discussed in *Nolte*. In *Lamoreaux* the Minnesota court, by applying a

unique doctrine of constructive improvement, held that an architect was entitled to a lien for his services in preparing plans and specifications for the construction of a permanent improvement under a lien statute similar to our Code of Civil Procedure sections 1181 and 1182, even though no work of improvement had commenced and apparently even though the land itself was not benefited thereby. Significantly, however, in that case the owner had repudiated his contract with the architect and had abandoned the project before the work could commence; and, if we understand the court's reasoning correctly, this was the decisive factor. The court stated at page 911: "While it is perhaps difficult to see how the value of property is enhanced in any case by labor or material that does not go into the improvement, or how such labor or material 'contributes to the improvement,' our liberal policy has led to this result where there is an actual improvement. Is it an unwarranted extension of this doctrine to include cases where no improvement is made, when that is no fault of the laborer or materialman? . . . We must not overlook the fact, as found by the trial court, that defendants prevented the improvement, thus of their own volition and through their breach of contract preventing the work of plaintiffs from actually contributing to the construction of an actual improvement on the land. . . . Though the question is not free from doubt, we have reached the conclusion that the owner cannot, in this way, destroy the right to a lien."

Having determined that the trial court erred in declaring that respondent was entitled to a mechanic's lien against appellants' property, we will now direct our attention to appellants' assertion that the court also erred in awarding respondent a personal judgment. They argue that this portion of the judgment does not conform with the pleadings, but to the contrary goes beyond the issues raised in the complaint and is void. They call attention to the fact that the complaint is designated a complaint to foreclose a mechanic's lien, and that this denomination was used in respondent's pretrial conference statement and in the court's pretrial conference order. They also apparently argue that respondent could not recover a personal judgment because he made no demand against them personally (the claim of lien which respondent recorded referred only to a demand against the property).

We do not agree with these contentions. It is settled that once a court acquires jurisdiction in a suit to enforce a mechanic's lien it has jurisdiction to render a personal judg-

ment for the amount claimed against any party liable therefor, even if the right to a lien is denied (*Mannix* v. *Tryon,* 152 Cal. 31 [91 P. 983]). ▮ Moreover, in asserting that the personal judgment is inconsistent with the pleadings and cannot stand, appellants ignore portions of paragraphs III and IV of respondent's complaint which in and of themselves state a cause of action against appellants for a personal judgment. In these paragraphs respondent alleged, among other essential facts, that his architectural services were performed at the special "instance" and "request" of the appellants, that said services were of a fair and reasonable market value of $15,141, and that no part of this sum had been paid.

▮ It is an elementary principle of modern pleading that the nature and character of a pleading is to be determined from its allegations, regardless of what it may be called, and that the subject matter of an action and issues involved are determined from the facts alleged rather than from the title of the pleadings or the character of the damage recovery suggested in connection with the prayer for relief. (*Tomales Bay etc. Corp.* v. *Superior Court,* 35 Cal.2d 389 [217 P.2d 968]; *Buxbom* v. *Smith,* 23 Cal.2d 535 [145 P.2d 305].)

▮ Moreover, appellants also ignore paragraph I of respondent's prayer. In this paragraph respondent prayed for judgment in the sum of $15,141 against the defendants personally in addition to his prayer for lien foreclosure. Hence, it is manifest that appellants were on notice as to the exact nature of the relief requested by respondent, not only by virtue of the facts alleged in his complaint, but by virtue of the prayer itself. ▮ As said in 32 Cal.Jur.2d at page 745: "In the case of a mechanic's lien, the property is like an independent fund to which the lien claimant may resort without regard to the personal liability of the person with whom he contracted. Where a personal judgment is asked for and is available under the circumstances, such judgment is merely incidental to the foreclosure." (*Case* v. *Kirkwood,* 119 Cal.App. 207 [6 P.2d 110]; *Holden* v. *Mensinger,* 175 Cal. 300 [165 P. 950].)

In any event, even if it is assumed for the sake of argument that respondent's complaint did not state a cause of action for a personal judgment, it is difficult to understand how appellants were prejudiced thereby. They can hardly claim that they were surprised or inadequately prepared at the time of trial. As we have stated, the respondent prayed for a personal judgment as well as for the foreclosure of the lien.

Moreover, respondent's pretrial conference statement which was incorporated into the court's pretrial conference order adequately sets forth the basic issues involved, and during the trial appellants met and ably defended against all of these issues. As stated in *Frisvold* v. *Leahy,* 15 Cal.App.2d 752, 756 [60 P.2d 151] : ''The requirement to specifically plead facts in a complaint is to apprise the defendant of the circumstances upon which plaintiff relies and to prevent defendant from being taken by surprise.'' And as stated in *Ades* v. *Brush,* 66 Cal.App.2d 436, 444 [152 P.2d 519] : ''It is also well settled that the failure of a complaint to state a cause of action is not fatal to a judgment for the plaintiff unless the appellant can show that the error has resulted in a miscarriage of justice.''

Appellants' argument that respondent could not recover a personal judgment because no demand was made against them for payment is entirely without merit. ■ A demand is not a prerequisite to the filing of an action unless it is an essential part of the cause of action. In other words, the action itself is the only demand necessary where it is the defendant's unconditional duty to perform an act or to pay a sum of money (*Danielson* v. *Neal,* 164 Cal. 748 [130 P. 716] ; *Bryson* v. *McCone,* 121 Cal. 153 [53 P. 637] ). Consequently, a plaintiff who seeks to recover for the reasonable value of his services allegedly performed at the request of the defendant is not required to make demand for payment before bringing an action, nor is he required to allege that he has done so in his complaint (2 Witkin, Cal. Procedure (1954) § 266, p. 1242).

Appellants' remaining contentions are (1) that the court erred in refusing to admit evidence of a collateral condition precedent to the written agreement between appellants and respondent relating to his architectural services, and (2) that the court erred in its mathematical computation in arriving at the reasonable value of respondent's services. We will separately consider each of these contentions.

(1) On several occasions during the trial appellants attempted to introduce evidence (through the testimony and deposition of appellant James H. Filice) that appellants' liability under the written employment contract was contingent upon their ability to secure financing for the project, and that if they could not secure the necessary financing nothing would be paid to respondent for his services. On one side of the coin appellants, relying on the rule that parol evidence is admissible to show that a written contract was not to become effective until the happening of a condition precedent, contend that

they were improperly precluded from proving that the written employment contract upon which respondent's action was initially based was not to become effective until the financing condition had been fulfilled. On the other side of the coin they argue that in any event the evidence was clearly material to the issues involved in the oral contract which the court found was subsequently made. In other words, they assert that initially respondent's suit seemed to rest on the written contract and that the proffered evidence was admissible to show that this contract was never effective. Later, when emphasis was shifted to the oral agreement, the evidence was admissible to understand the terms of this agreement.

Directing our attention first to appellants' arguments on the admissibility of the proffered evidence to prove that the written contract never became effective, we note that respondent's complaint does not allege or make any reference to this contract. It simply alleges that respondent's services were performed at the "instance" and "request" of the appellants, and that the reasonable and fair market value of his services was in the amount of $15 141. Moreover, appellants' answer raises no affirmative defenses. It only denies the allegations of respondent's complaint.[1] Finally, the pretrial conference order specifies the issues as follows:

1. Whether or not all of the real property described was benefited by any services bestowed.

2. The amount of services ordered.

3. The amount of services rendered.

4. The agreement for compensation.

5. Any payments or offsets.

■ Thus, it is clear that evidence of a written employment agreement to show that respondent's services were performed at appellants' instance and request, as well as evidence of a subsequent oral agreement wherein the parties agreed to terminate the written employment agreement and whereby appellants agreed to pay respondent for the reasonable value of services performed, was well within the issues framed by the pleadings and by the pretrial conference order. It is also clear, however, that appellants' attempt to introduce evidence of a condition precedent to the effectiveness of the

[1]Significantly, appellants alleged in their answer that they were unable to plead an affirmative defense at that time and requested permission to plead such a defense at a later date. However, no such amendment was ever offered and not even during the trial when the court sustained respondent's objection that appellants' evidence was outside of the issues of the case.

written agreement was an attempt to engender new matter in the case, and to raise an issue which was not raised by the pleadings or covered by the pretrial conference order. This follows, for an oral understanding of a condition precedent to the effectiveness of a written contract is an affirmative defense which is not available unless pleaded.[2] As stated by the court in *Standard Oil Co.* v. *Houser,* 101 Cal.App.2d 480, 488 [225 P.2d 539] : ''Such matters [as limitation, a condition precedent, or exoneration] are affirmative defenses and are not available unless pleaded. (Code Civ. Proc., § 437; *Blackwood* v. *McCallum,* 187 Cal. 655, 659 [203 P. 758]; *Pacific M. & T. Co.* v. *Massachusetts B. & I. Co.,* 192 Cal. 278, 285 [219 P. 972]; *Hobson* v. *Metropolitan Casualty Ins. Co.,* 120 Cal.App. 727, 730 [8 P.2d 150].)''

Appellants' ''other side of the coin'' argument that the evidence should have been admitted by the court in order to properly understand the terms of the subsequent oral agreement which was made by the parties is not convincing when considered in light of the testimony of appellant James H. Filice while describing the conversation which he had with respondent. Mr. Filice testified as follows :

''A. I said, 'Mr. McDonald, I can not get financing for the motel because it's too much money, and that if I were to build the smaller unit, I think I would be able to finance it and build it on my own property', and which he said, 'Well, I would be glad to work with you' and I said, 'Okay. For the work you have done I would like to compensate you', and he said, 'Well, I guess, Jim', he says, 'we can get together on it. It will cost you maybe for my work I have done between two and \$3,000. I'll send you a letter and let you know exact what the amounts are.'

''Q. Now, then, what was the conversation with respect to the smaller unit ?

---

[2]It is not clear from the record whether the condition referred to constitutes a condition precedent or a condition subsequent. That is, was the condition such that the contract would not become effective until financing was secured, or, rather, was the lack of financing simply to be an excuse for nonpayement by Filice? We do not find it necessary, however, to decide this point for the affirmative defense rule is also applicable to a condition subsequent or to any similar defense which is offered as an excuse for nonperformance. (See *Eucalyptus Growers Assn.* v. *Orange County Nursery etc. Co.,* 174 Cal. 330 [163 P. 45]; *Blethen* v. *Blake,* 44 Cal. 117.) For a discussion of the difference between conditions precedent not subject to the parol evidence rule and conditions subsequent, see Witkin, California Evidence (1958), § 378, p. 409; and Witkin, California Evidence (2d ed. 1966), § 742, p. 687.

"A. He would be willing to work with me on the smaller unit.

"Q. Did you go into any more detail than that on the smaller unit?

"A. Yes. There was one figure that I had from a Mr. Jim Smith up in Tahoe, and we were to use his plans, putting them down to the smaller unit, and put in a flat top roof instead of the lean-to roof or whatever you call the sloped roof on the building."

From this testimony it is clear that before the oral agreement was made (as the court found) the appellants did not intend to abandon the project because of lack of financing. Rather, they contemplated a substantial change in the plans which respondent had already prepared and indicated their willingness to pay him for the reasonable value of the services which he had already performed. The only real disagreement (and the only substantial conflict in the testimony) in this respect was in relation to what constituted the reasonable value of respondent's services, respondent claiming that he had advised appellants that it was an additional sum of approximately $9,000 and appellants asserting that respondent had stated that approximately $3,000 would be sufficient. Consequently, it is difficult to understand what relevance the condition precedent may have had to this disagreement between the parties.

Moreover, as far as we have been able to ascertain from the record, appellants' reasons for offering the evidence were never clearly and unequivocally made known to the court. To the contrary, the record is ambiguous and even confusing in this respect. In fact, on at least one occasion appellants informed the court that in their opinion the existence of the condition precedent was in issue under the pleadings (under the general denial). On another occasion appellants informed the court that the testimony was offered on the issue of payment and to determine how much was due and owing to respondent. And still on another occasion they stated that the testimony was offered to show that respondent's compensation was to be under the written employment contract in the event of termination, since this contract made no provision for this eventuality. (This latter purpose not only raised a question of relevance but violated the parol evidence rule.) It is the rule that where evidence is material and relevant for one purpose but inadmissible for another purpose either because it is irrelevant or because some rule excludes it for that purpose, it is the duty of the party offering the evidence to state

clearly the proper purpose; and if his only expressed theory in offering the evidence is an improper one the court may properly exclude it (*Estate of Parkinson,* 190 Cal. 475 [213 P. 259]; *Roberts* v. *Roberts,* 168 Cal. 307 [142 P. 1080, Ann.Cas. 1916A 866]; *Estate of Smead,* 219 Cal. 572 [28 P.2d 348]).

Appellants' final thrust is that the court's finding that "obtaining the finance was not a condition precedent to the contemplated construction," in view of its steadfast refusal to hear evidence upon the issue, is an impossible anomaly. It is interesting to note in passing that this special finding was made by the court at appellants' request. However, even so the finding is understandable when viewed in light of the court's apparent ruling that the existence of the condition precedent was not in issue under the pleadings. Thus, in essence, the court simply found that appellants had admitted under the pleadings that the obtaining of financing was not a condition precedent to the effectiveness of the written contract or to the payment of compensation to respondent for his services.

(a) According to the trial court's findings of fact, the court computed the reasonable value of respondent's services as follows:

| | |
|---|---:|
| Salaries and overhead: | $ 6,596.00 |
| Structural engineering: | 3,100.00 |
| Electrical engineering: | 240.00 |
| Preliminary fee: | 5,205.00 |
| | $15,141.00 |
| Credits are to be allowed: | 6,205.00 |
| Balance due to plaintiff: | $ 8,936.00 |

Appellants contend, however, that the court erred in its arithmetical computation by including the preliminary fee (the sum of $5,205) as a chargeable item rather than deducting this amount in its calculations. Thus, they assert that the correct computation should have been as follows:

| | |
|---|---:|
| Salaries and overhead: | $ 6,596.00 |
| Structural engineering: | 3,100.00 |
| Electrical engineering: | 240.00 |
| Total | $ 9,936.00 |
| Amount paid by appellants to Central Valley National Bank to credit of the respondent: | $ 5,205.00 |
| Balance due respondent: | $ 4,731.00 |

██ We note from the record that appellants made a motion for a new trial. Accordingly, we assume that this alleged arithmetical error was called to the trial court's attention; and since the motion was denied without modification of the judgment, we must also assume that no such arithmetical error was made. To the contrary, we conclude that the court intentionally included the item described as the preliminary fee in the items which it allowed in arriving at the reasonable value of respondent's services. From this total it deducted the credits amounting to $6,205 in order to arrive at the balance payable. These credits included the money borrowed by respondent from the bank on a loan ultimately paid by appellants ($5,205) and the payment made by appellants to respondent ($1,000) for his zoning services. Consequently, the remaining question is whether there is substantial evidence to support the court's decision in this respect.[3]

██ Respondent testified that the sum of $5,205 which he borrowed from the bank on the loan which was ultimately paid by the appellants was received by him as payment of the preliminary fee, which according to the written employment contract was 30 percent of the 5 percent total fee based on the estimated construction cost of the project (respondent had estimated the construction cost at $347,000). Respondent further testified that he was entitled to receive the preliminary fee in addition to reimbursement for salaries and overhead and out-of-pocket structural and engineering expenses as compensation for the reasonable value of his services. Finally, (and here his testimony is confusing and at times even conflicting) respondent testified that the preliminary fee was in payment for services rendered prior to January 1962, and that the salaries and overhead items were for services performed thereafter. The court apparently believed respondent's testimony. Moreover, in evaluating respondent's services the court had before it the preliminary drawings, the specifications, the working drawings and other documentary evidence. Accordingly, it obviously concluded that a sum equal to the preliminary fee which respondent would have received under the written employment contract, plus reim-

---

[3]As we have already stated, the court expressly found that the parties had mutually rescinded an employment agreement and substituted in its place an oral agreement that respondent would be compensated for the reasonable value of his services. As we have also stated, this finding is not challenged by the appellants. In fact, they rely on the finding in contending that a lien did not attach against their land. Thus, it was the court's responsibility to determine the reasonable value of respondent's services.

bursement for salaries and overhead and out-of-pocket expenses, was in fact the reasonable value of the services which he performed, and there is substantial evidence to support its decision. In making our determination to this effect, we have kept in mind that we do not weigh the evidence, nor do we judge the credibility of the witnesses. Rather, we resolve all conflicts in favor of respondent and indulge in all legitimate and reasonable inferences in his favor in order to support the verdict (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183]).

Appellants' argument that by virtue of the court's decision respondent received substantially the same amount for services as he would have received had the project been completed, and that by analogy they paid the same price for one horse as they would have paid for two horses, is persuasive but not controlling. The court was not bound by the compensation specified in the written agreement in order to arrive at the reasonable value of respondent's services. It was free to find that he was entitled to receive approximately as much for the uncompleted services as he would have received for the completed services if in its judgment and discretion this constituted reasonable value. Moreover, Mr. Rowland Gibbs, the president of the American Institute of Architects, testified that the schedule of fees recommended by the institute for a comparable project was between 7 percent and 8 percent of the construction cost. Thus, the court was entitled to find that the respondent's fee of 5 percent, as prescribed in the written employment contract, was on the low side, and we do not find that it abused its discretion.

For the foregoing reasons the portion of the judgment awarding respondent's mechanic's lien against appellants' land and ordering the foreclosure thereof is reversed. In all other respects the judgment is affirmed.

Conley, P. J., and Stone, J., concurred.